UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPECIAL SITUATIONS FUND III QP, L.P. et al.,

                Plaintiffs,

                   v.

DELOITTE TOUCHE TOHMATSU CPA, LTD. et al.,

                Defendants.

No. 13-cv-01094 (ER)

Judge Edgardo Ramos

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DELOITTE & TOUCHE LLP'S
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

William R. Maguire
Savvas A. Foukas
Jesse James
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Attorneys for Deloitte & Touche LLP*

## <u>TABLE OF CONTENTS</u>

Preliminary Statement ........................................................................................................1

Factual Background .........................................................................................................4

Argument .........................................................................................................................7

I.    THE AMENDED COMPLAINT CONTAINS NO
RELEVANT FACTUAL ALLEGATIONS ABOUT DELOITTE U.S. ...........................9

    A.    The Amended Complaint Relies on Impermissible Group Pleading .....................9

    B.    The Amended Complaint Relies on Conclusory Allegations ...............................10

II.    THE AMENDED COMPLAINT FAILS TO PLEAD A SECTION 20(a) CLAIM .........11

    A.    The Amended Complaint Fails to Plead Control .....................................................11

        1.    The Amended Complaint fails to plead general control ............................12

        2.    The Amended Complaint fails to plead control over the ChinaCast
audits ........................................................................................................13

    B.    The Amended Complaint Fails to Plead Culpable Participation .........................17

III.    THE AMENDED COMPLAINT FAILS TO STATE A SECTION 18 CLAIM ..............19

    A.    Deloitte U.S. Did Not "Cause" ChinaCast to Make Any Statement ...................19

    B.    The Amended Complaint Fails to Plead Reliance .................................................21

    C.    There Is No Section 18 Liability for Statements on Part I of Form 10-Q ............21

IV.    THE AMENDED COMPLAINT FAILS TO PLEAD A
COMMON LAW FRAUD CLAIM ..............................................................................22

Conclusion ......................................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ...........................................22

*In re Adelphia Communications Corp. Securities & Derivative Litigation*, No. 03 MD 1529 (LMM), 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ................................20

*In re Alstom SA*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ...................................... *passim*

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) .....................12, 13, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... *passim*

*Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333 (2d Cir. 2011) ...........................................23

*In re Asia Pulp & Paper Securities Litigation*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003)................12

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .......................11, 17

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) .........................................9

*Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146 (2d Cir. 1995)...................................................................22

*Bayerische Landesbank, N.Y. Branch v. Barclays Capital, Inc.*, 902 F. Supp. 2d 471 (S.D.N.Y. 2012).......................................................................17

*In re Beacon Associates Litigation*, 745 F. Supp. 2d 386 (S.D.N.Y. 2010) ................................17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................7, 11

*In re Blech Securities Litigation*, 961 F. Supp. 569 (S.D.N.Y. 1997) ....................................15, 16

*Burstyn v. Worldwide Xceed Group, Inc.*, No. 01 Civ. 1125 (GEL), 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002)..............................................................8

*Castillo v. Dean Witter Discover & Co.*, No. 97 Civ. 1272 (RPP), 1998 WL 342050 (S.D.N.Y. June 25, 1998)..............................................................10

*Cohen v. Stevanovich*, 722 F. Supp. 2d 416 (S.D.N.Y. 2010)......................................17

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168 (10th Cir. 2006)..............................................................19, 20

*In re Digi International, Inc. Securities Litigation*, 6 F. Supp. 2d 1089 (D. Minn. 1998) ...........21

*DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242 (2d Cir. 1987)........................10

*Dronsejko v. Grant Thornton*, 632 F.3d 658 (10th Cir. 2011)........................................20

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168
     (2d Cir. 2004)........................................................................................22, 23

*Ferro v. Railway Express Agency, Inc.*, 296 F.2d 847 (2d Cir. 1961)............................................9

*Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618 (S.D.N.Y. 2004)........................................14

*In re Flag Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp. 2d 429 (S.D.N.Y.
     2005) ................................................................................................12, 15, 16

*In re Global Crossing, Ltd. Securities Litigation*, No. 02 Civ. 910 (GEL), 2005 WL
     1875445 (S.D.N.Y. Aug. 5, 2005) ................................................................16, 17

*H & H Acquisition Corp. v. Financial Intranet Holdings*, 669 F. Supp. 2d 351 (S.D.N.Y.
     2009) ................................................................................................13

*Heit v. Weitzen*, 402 F.2d 909 (2d Cir. 1968) ................................................................22

*Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012) ................................16

*Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654 (S.D.N.Y. 1997) ....................13

*International Fund Management S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368 (S.D.N.Y.
     2011) ................................................................................................21

*In re J.P. Jeanneret Associates, Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011)................................17

*In re JP Morgan Chase Securities Litigation*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................19

*Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006)................................17

*In re Lehman Brothers Mortgage-Backed Securities Litigation*, 650 F.3d 167 (2d Cir.
     2011) ................................................................................................14, 15, 17

*McIntire v. China MediaExpress Holdings, Inc.*, 927 F.Supp.2d 105 (S.D.N.Y. 2013) .........17, 18

*Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc.*, No. 09 Civ. 3708, 2012
     WL 6168151 (S.D.N.Y. Dec. 11, 2012) ................................................................17

*Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636 (2d Cir. 2012) ..................18

*Naughright v. Weiss*, 826 F. Supp. 2d 676 (S.D.N.Y. 2011)........................................23

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613 GBD, 2004
     WL 112948 (S.D.N.Y. Jan. 22, 2004) ................................................................12

iii

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ....................................................................9

*In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ................................17

*Pasternack v. Laboratory Corp. of America*, No. 10 Civ. 4426 (PGG), 2011 WL 3478732 (S.D.N.Y. Aug. 1, 2011) ...............................................................................................22

*Pennsylvania Public School Employees' Retirement System v. Bank of America Corp.*, 874 F. Supp. 2d 341 (S.D.N.Y. 2012)............................................................................17

*Reingold v. Deloitte Haskins & Sells*, 599 F. Supp. 1241 (S.D.N.Y. 1984)............................3, 13

*Rocker Management., L.L.C. v. Lernout & Hauspie Speech Products N.V.*, Civ. A. No. 00-5965 (JCL), 2005 WL 1365772 (D.N.J. June 8, 2005) .......................................10

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ................................................................8

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)................................................................18

*In re Royal Ahold N.V. Securities & ERISA Litigation*, 351 F. Supp. 2d 334 (D. Md. 2004) ........................................................................................................................13

*In re Royal Dutch/Shell Transport Securities Litigation*, 380 F. Supp. 2d 509 (D.N.J. 2005) ........................................................................................................................13

*Ruston v. Town Board for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010) ...........................7, 10

*In re Satyam Computer Services Ltd. Securities Litigation*, 915 F. Supp. 2d 450 (S.D.N.Y. 2013)..............................................................................................17, 18

*SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996)..............................................12

*Securities Investor Protection Corp. v. BDO Seidman, LLP*, 222 F.3d 63 (2d Cir. 2000)...........23

*Sherwood v. Chan*, No. 7106-VCP (Del. Ch. Dec. 12, 2011)..................................................6

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ............................................23

*Skidmore Energy, Inc. v. KPMG LLP*, No. 03-cv-2138-B, 2004 WL 3019097, at *4 (N.D. Tex. Dec. 28, 2004)) ...................................................................................................13

*In re Smith Barney Transfer Agent Litigation*, 884 F. Supp. 2d 152 (S.D.N.Y. 2012) ...............13

*Solow v. Citigroup, Inc.*, 507 F. App'x 81 (2d Cir. 2013) ......................................................17

*Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329 (DC), 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008) .........................................................................................13

iv

*In re Stone & Webster, Inc., Securities Litigation*, 253 F. Supp. 2d 102 (D. Mass. 2003)............21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007)................................18

*In re UBS AG Securities Litigation*, No. 07 Civ. 11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)................................................................................10

*V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253 (S.D.N.Y. 2012) ............................23

*In re Worldcom, Inc. Securities Litigation*, No. 02 Civ. 3288, 2003 WL 21488087 (S.D.N.Y. June 25, 2003)..............................................................13

## STATUTES AND RULES

15 U.S.C. § 78u-4 .......................................................................8, 18

Fed. R. Civ. P. 8 .......................................................................9, 10, 11

Fed. R. Civ. P. 9(b) .................................................................. *passim*

## REGULATIONS

17 C.F.R. § 240.12b-2.................................................................12

17 C.F.R. § 240.13a-13(d)...........................................................21

**Preliminary Statement**

Plaintiffs are sophisticated investors who allege that they were defrauded into buying securities of ChinaCast Education Corporation, Inc. ("ChinaCast"), a company operating in the People's Republic of China, by misstatements in ChinaCast's financial statements, and that the value of their securities fell when ChinaCast's fraud was revealed.  Plaintiffs have chosen not to sue ChinaCast for its alleged misstatements, perhaps because several plaintiffs are, or are controlled by, ChinaCast insiders who signed certain of the allegedly misleading statements. Instead, plaintiffs have sued, among others, the United States partnership Deloitte & Touche LLP ("Deloitte U.S."), claiming that Deloitte U.S. is somehow responsible for their alleged losses under Sections 20(a) and 18 of the Exchange Act and under a claim for common law fraud.

There is no basis for any claim against Deloitte U.S.  It is undisputed that Deloitte U.S. did not serve as ChinaCast's auditor and did not issue any report on ChinaCast's financial statements.  As the Amended Complaint acknowledges, the Chinese member firm of the Deloitte network, Deloitte Touche Tohmatsu CPA, Ltd. ("DTTC"), performed audits and issued reports on ChinaCast's financial statements.  Indeed, Deloitte U.S. is not mentioned in any of those reports and it made no statement at all concerning ChinaCast.

This is not the first time that investors have attempted to hold the U.S. member firm of an international network of auditing firms responsible for an audit performed by another member firm.  Over the past three decades, courts in this District and elsewhere have repeatedly rejected various theories of liability predicated on bare allegations that one member firm in such a network controlled another member firm.  The Amended Complaint provides no reason to depart from this established body of precedent.[1]   As demonstrated below, the Amended Complaint

---

1.  In response to an inquiry from the Court at the October 1 pre-motion conference, plaintiffs conceded that there is nothing "[i]nherently wrong with the fact that there are two different legal entities, Deloitte Touche Tohmatsu

should be dismissed as to Deloitte U.S. for impermissible conclusory pleading, and for failure adequately to plead necessary elements of each of the three claims against the firm.

### *Impermissible Conclusory Pleading*

In its opening paragraph, the Amended Complaint defines "Deloitte" collectively, to include both DTTC, which was ChinaCast's auditor, and Deloitte U.S., which was not. Grouping these two defendants together as "Deloitte" is impermissible, particularly where, as here, the action is subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and of the Private Securities Litigation Reform Act (the "Reform Act").

Notably, in the few instances where the Amended Complaint separately refers to Deloitte U.S., it fails to plead any particularized facts to support a claim. Indeed, despite the fact that ChinaCast's current Chief Financial Officer, Douglas Woodrum, has access to the company's financial records and is himself a named plaintiff, the Amended Complaint is devoid of facts to support its conclusory assertions that Deloitte U.S. had "control over," or a right to "approve" or "sign off" on ChinaCast's public filings. (*E.g.,* Am. Compl. ¶¶ 32, 53-54, 187, 219, 252.) It is well established that, even under the most liberal pleading standards, bare legal conclusions without supporting factual allegations are insufficient to state a claim.

### *Section 20(a)*

The Amended Complaint fails to state a control person claim under Section 20(a) for three independent reasons: (1) the pleading fails adequately to allege that Deloitte U.S. had control over DTTC; (2) the pleading fails adequately to allege that Deloitte U.S. had control over

---

CPA, Ltd., which is in China, and Deloitte & Touche LLP, which is the U.S. entity." Declaration of Jesse James in Support of Defendant Deloitte & Touche LLP's Motion to Dismiss the First Amended Complaint, dated November 1, 2013 ("James Decl.") Ex. 2 (Tr. of Oct. 1, 2013, Pre-Motion Conference), at 6:10-13; *see also id.* at 6:15-17 ("We certainly don't allege that there is anything wrong with the global brand of Deloitte having separate legal entities in various areas.")

DTTC's audits of ChinaCast's financial statements; and (3) the pleading fails adequately to allege that Deloitte U.S. was a culpable participant in the alleged fraud.

### *Section 18*

The Section 18 claim is deficient for several reasons.  To begin, the Amended Complaint recognizes that Deloitte U.S. made no statement at all about ChinaCast, but still seeks to hold Deloitte U.S. liable under a theory that "*Deloitte*" somehow "caused" *ChinaCast* to make the alleged misstatements.  Even apart from impermissible group pleading, this theory is doubly flawed.  First, the role of an independent auditor is to express an opinion on financial statements that its client prepares and issues.  In doing so, an auditor does not "cause" its client to make any statement at all; indeed, the choice as to whether to issue financial statements, like any other public disclosure, remains at all times that of the client.  Second, the Amended Complaint acknowledges that Deloitte U.S. was not even ChinaCast's auditor.  Thus, even if there were some theory on which an auditor could "cause" its client to make a statement, that theory would be inapplicable to Deloitte U.S.

The Section 18 claim is further deficient because (a) it fails adequately to plead how plaintiffs relied upon the alleged misstatements − facts that are uniquely within the knowledge of plaintiffs; and (b) many of the alleged misstatements pleaded by plaintiffs are contained in quarterly reports filed by ChinaCast on Form 10-Q, and such statements are explicitly excluded from Section 18 liability.

### *Common Law Fraud*

Finally, the Amended Complaint fails to plead particularized facts to support several elements of a claim for common law fraud.  Specifically, it fails to plead:

- that Deloitte U.S. made any statement;

- that Deloitte U.S. acted with fraudulent intent; or

3

- that plaintiffs relied on anything that Deloitte U.S. said or did.

Accordingly, the Amended Complaint should be dismissed in its entirety as against Deloitte U.S.  Because plaintiffs have already amended their complaint once and, at the October 1 pre-motion conference, expressly declined a second opportunity to amend, dismissal should be with prejudice.

## Factual Background[2]

### ChinaCast's Disclosures, Beginning in April 2012, of "Questionable Activities"

Non-party ChinaCast is a Delaware corporation formed in 2006 through a so-called "reverse merger" in which a company operating in the People's Republic of China merged into a publicly traded U.S. shell company.  (Am. Compl. ¶¶ 1, 39, 45.)  According to the Amended Complaint, ChinaCast provides education services in China by means of both an "E-learning" business and a traditional "bricks and mortar" university business offering bachelor's degrees and other diploma programs.  (*Id.* ¶¶ 40-41, 48.)

In April 2012, ChinaCast began making a series of disclosures of "questionable activities and transactions" by prior management.[3]  (*Id.* ¶ 174.)  On December 21, 2012, ChinaCast reported that its 2009 and 2010 financial statements could no longer be relied upon.  (*Id.* ¶¶ 182.)

### Plaintiffs and Their Ties to ChinaCast

Plaintiffs are various investment funds and individuals who claim to have purchased ChinaCast stock between March 31, 2008 and March 30, 2012.  (*Id.* ¶ 1.)  According to the

---

2.  Well-pleaded allegations in the Amended Complaint are assumed to be true for purposes of this motion only.

3.  These disclosures included that (1) ChinaCast only had a 49.2% stake in certain subsidiaries in which it had previously claimed a 98.4% interest, (2) amounts classified as term deposits were in fact pledged to third parties, (3) ChinaCast had never received, or had transferred to outside entities, proceeds of stock offerings, (4) it had entered into undisclosed loans with persons and entities related to previous management, (5) it may have transferred ownership of two of its private colleges to third parties without authorization, and (6) it had overstated the amount it paid for certain acquisitions.  (Am. Compl. ¶¶ 177, 179, 182.)

Amended Complaint, plaintiffs purchased ChinaCast stock in reliance on alleged misstatements that ChinaCast made between those dates in its filings with the SEC.[4]   (*Id.*)

Unlike a typical suit by public shareholders, in this action, certain plaintiffs have close ties to the company in which they invested.  Mr. Ned Sherwood has served as a ChinaCast director since December 2009, served as its audit committee's financial expert until September 2011, and signed certain of the allegedly misleading statements at issue here, namely ChinaCast's annual report on Form 10-K for the year ended December 31, 2009, and the Forms 10-K and 10-K/A for the year ended December 31, 2010.[5]  Mr. Sherwood was a ChinaCast director, and the audit committee financial expert, when ChinaCast filed its allegedly misleading quarterly reports on Forms 10-Q for all three quarters of 2010 and the first two quarters of 2011. While not a named plaintiff himself, Mr. Sherwood controls, or is closely associated with, several of the investment fund plaintiffs.[6]  In addition, Plaintiff Douglas Woodrum is ChinaCast's Chief Financial Officer.  Plaintiff Woodrum has also been a ChinaCast director

---

4.   Plaintiffs claim that the alleged misstatements are contained in ChinaCast's Forms 10-K for the years 2007 through 2010, and Part I of its Forms 10-Q for the periods June 30, 2008 through September 30, 2011.  (Id. ¶¶ 1, 196-97.)

5.   *See* ChinaCast Education Corporation Form 10-K for the Fiscal Year Ended December 31, 2009, filed March 29, 2010, *available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420410016325/ v178104_10k.htm; Form 10-K for the Fiscal Year Ended December 31, 2010, filed March 16, 2011, *available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420411015304/v214529_10k.htm; and Forms 10-K/A for the Fiscal Year Ended December 31, 2010, filed September 2, 2011, *available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420411051244/v233789_10ka.htm, filed February 8, 2012,  *available at* http://www.sec.gov/Archives/edgar/data/1261888/ 000114420412006640/v300586_10ka.htm), and filed February 24, 2012, *available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420412010843/v302252_10ka.htm.

6.   At the October 1, 2013 pre-motion conference, plaintiffs acknowledged that Mr. Sherwood is a partner of plaintiffs ZS EDU L.P. and MRMP Managers LLC.  (*See* James Decl. Ex. 2, at 26:16-17.)  Furthermore, during his proxy fight with ChinaCast's former management, Mr. Sherwood brought suit in Delaware on behalf of himself and plaintiff ZS EDU L.P.  The complaint in that suit states that "Plaintiff ZS EDU . . . beneficially owns 2,625,488 of the 3,400,629 shares of ChinaCast common stock beneficially owned by Plaintiff Sherwood. Plaintiff Sherwood is a member of the general partner of ZS EDU."  (James Decl. Ex. 3 (Verified Complaint, *Sherwood v. Chan*, No. 7106-VCP (Del. Ch. Dec. 12, 2011)) ¶ 11.)  The complaint also states that "[d]uring the year 2011 alone, Sherwood, on behalf of entities that he controls, has purchased more than 3,140,000 of [ChinaCast's] common shares."  (*Id.* ¶ 22.)

since January 23, 2012, and, in that capacity, he signed one of the company filings that, as a named plaintiff, he now claims was misleading.[7]

## DTTC

DTTC is a Chinese auditing firm that audited and issued reports on ChinaCast's financial statements for the years 2007 through 2010.  (*Id.* ¶ 31.)  DTTC also conducted reviews of ChinaCast's unaudited quarterly financial statements.  (*Id.*)

## The Allegations that Deloitte U.S. "Controlled" DTTC's Audits

Deloitte U.S. is a United States auditing firm.  (*Id.* ¶ 32.)  While Deloitte U.S. and DTTC are both members of the Deloitte Touche Tohmatsu network of independent firms, they are separate and legally distinct entities, and the Amended Complaint makes no allegation, nor could it, that the two firms have any common ownership or management.  There is no allegation that Deloitte U.S. ever audited ChinaCast's financial statements or issued any report on ChinaCast's financial statements.  Nor is Deloitte U.S. mentioned in any report on ChinaCast's financial statements.  In fact, the Amended Complaint does not allege that Deloitte U.S. ever made any statement regarding ChinaCast.

Unable to plead any statement by Deloitte U.S., the Amended Complaint instead defines "Deloitte" to include both Deloitte U.S. and DTTC, and then makes assertions against "Deloitte."  (*See, e.g.*, Am. Compl. ¶¶ 1, 4-7, 9-10, 56, 58-61, 67, 77, 79-80, 82-83, 87-88, 95-97, 102-107, 123-125, 130-132, 148-150.)  In a few instances in which the Amended Complaint separately mentions Deloitte U.S., it asserts that Deloitte U.S. controlled DTTC without any

---

7.  Mr. Woodrum signed the Form 10-K/A for the year ended December 31, 2010, filed February 24, 2012 (*available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420412010843/v302252_10ka.htm).  In addition, Mr. Woodrum was a director when the Form 10-K/A for the year ended December 31, 2010, filed February 8, 2012, was filed (*available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420412006640/v300586_10ka.htm).  The Amended Complaint alleges that each of these filings was false and misleading.  (Am. Compl. ¶¶ 7, 110, 207, 238.)

supporting factual allegations.  For example, the Amended Complaint states that Deloitte U.S. "controlled DTTC's audits," that it "had the final word" on U.S. accounting issues (*id.* ¶ 53; *see id.* ¶¶ 3, 8, 32, 59, 187, 218-221, 252), and that it "caused materially false and misleading statements to be made"[8] (*id.* ¶ 52; *see id.* ¶¶ 8, 187), but the pleading does not allege any facts to support these conclusory assertions of control.

## <u>Argument</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While well-pleaded factual allegations are assumed to be true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Rather, "factual allegations must be sufficient to support necessary legal conclusions."  *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

The claims against Deloitte U.S. are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Second Circuit has held that these requirements are not limited "to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause

---

8.   The Complaint also includes an allegation that the Chinese firm consulted with Deloitte U.S. about an accounting issue in the course of auditing ChinaCast's 2010 financial statements.  (*Id.* ¶ 54.)  ChinaCast allegedly followed advice from Deloitte U.S. and wrote off certain pre-paid expenses until the SEC questioned the accounting, whereupon ChinaCast reversed the write-off in an amended filing that Deloitte U.S. allegedly "reviewed and approved."  (*Id.*)  The Amended Complaint does not allege that this issue had anything to do with the alleged fraud.  On the contrary, ChinaCast resolved its accounting for pre-paid expenses in filings in January and February, 2012, two months before the alleged fraud began to be revealed.  *See* ChinaCast Education Corporation Form 8-K, filed January 5, 2012, *available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420412000647/v244736_8k.htm, and Form 10-K/A for the Fiscal Year Ended December 31, 2010, filed February 8, 2012, *available at* http://www.sec.gov/Archives/edgar/data/1261888/000114420412006640/ v300586_10ka.htm, at i, "Explanatory Note."

62652111_1

of action." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).  Rather, these requirements

apply whenever fraudulent conduct is alleged in a complaint, even where fraudulent intent is not

an element of a claim.  *See, e.g.*, *id.* (applying Rule 9(b) to claims under Sections 11 and 12(a)(2)

of the Securities Act);  *In re Alstom SA*, 406 F. Supp. 2d 433, 483 n.45 (S.D.N.Y. 2005)

(Marrero, J.) (applying Rule 9(b) to Section 18 claim).  Because the Amended Complaint is

replete with references to the "knowing" or "reckless" conduct of "Deloitte,"[9] Rule 9(b) applies

here.

    The claims brought under Sections 20(a) and 18 of the Exchange Act are also subject to

the heightened pleading requirements of the Reform Act.  *See Burstyn v. Worldwide Xceed Grp.,*

*Inc.*, No. 01 Civ. 1125 (GEL), 2002 WL 31191741, at *8 (S.D.N.Y. Sept. 30, 2002) (Lynch, J.)

(applying the Reform Act's particularity requirement to Section 20(a) claim); *Alstom*, 406 F.

Supp. 2d at 483 n. 46 (same for Section 18 claims).  Under the Reform Act, a complaint must

"specify each statement alleged to have been misleading, the reason or reasons why the

statement is misleading, and, if an allegation regarding the statement or omission is made on

information and belief, the complaint shall state with particularity all facts on which that belief is

formed."  15 U.S.C. § 78u-4(b)(1)(B).  As to claims for which the defendant's state of mind is an

element, the Reform Act requires that a complaint "state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-

4(b)(2)(A).

---

9.   (*See* Am. Compl. ¶¶ 5, 6, 51, 52, 68, 82-83, 92-93, 96-97, 103 105, 107, 116, 120-121, 124-25, 131-32, 148-51, 153, 155, 157-59, 161, 162-66, 168-71, 185, 187, 197-98, 202.)

I.    **THE AMENDED COMPLAINT CONTAINS NO**
      **RELEVANT FACTUAL ALLEGATIONS ABOUT DELOITTE U.S.**

As explained below, the Amended Complaint relies, as against Deloitte U.S., on group

pleading (Section A, *infra*) and unsupported legal conclusions (Section B).  Such pleading is

impermissible and is alone a basis for dismissing the Amended Complaint.

    A.    **The Amended Complaint Relies on Impermissible Group Pleading**

Most allegations in the Amended Complaint must simply be ignored because they fail to

distinguish between Deloitte U.S. and DTTC, referring instead simply to "Deloitte."  For

example, the Amended Complaint states that "Deloitte issued unqualified audit opinions" on

ChinaCast's consolidated financial statements (Am. Compl. ¶¶ 56, 70), that "Deloitte certified"

allegedly false cash balances (*id.* ¶¶ 67, 77; *see id.* ¶ 80), and that "Deloitte recklessly issued an

unqualified opinion on the Company's internal controls over financial reporting" (*id.* ¶ 83),

despite acknowledging elsewhere that it was DTTC – and not Deloitte U.S. – that was the

independent auditor of, and issued reports on, ChinaCast's financial statements (*id.* ¶ 31).

Multiple other allegations follow the same format.  (*See, e.g.*, *id.* ¶¶ 4-7, 10, 58, 60-61, 68, 72,

79, 85, 87-88, 92-93.)

Lumping defendants together in this manner violates Rule 8, which "requires, at a

minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and

the ground upon which it rests.'"  *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir.

2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)).  "[F]ailure

to isolate the key allegations against each defendant supports dismissal under the standards set

forth in *Twombly* and *Iqbal*."  *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,

No. 12 Civ. 2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012) (Forrest, J.), *aff'd*,

No. 13-0005-cv, 2013 WL 3606123 (2d Cir. July 16, 2013).

9

Moreover, this "group pleading" also runs afoul of the requirements for pleading fraud allegations. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Both Rule 9(b) and the Reform Act require that a complaint "allege with particularity the role each defendant played in any fraudulent scheme, and why each defendant should be liable." *Castillo v. Dean Witter Discover & Co.*, No. 97 Civ. 1272 (RPP), 1998 WL 342050, at *12 (S.D.N.Y. June 25, 1998) (Patterson, J.); *see In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *9 (S.D.N.Y. Sept. 28, 2012) (Sullivan, J.) ("A plaintiff may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.") (internal quotation marks and brackets omitted). Thus, in *Rocker Management, L.L.C. v. Lernout & Hauspie Speech Products N.V.*, Civ. A. No. 00-5965 (JCL), 2005 WL 1365772, at *8 (D.N.J. June 8, 2005), the court rejected similar group pleading against a U.S. firm that belonged to a network of independent accounting firms: "The lumping together of KPMG offices under one 'KPMG' reference offends the particularity requirements embodied in Rule 9(b) and the PSLRA and is insufficient to rescue the deficiencies in the allegations concerning misstatements attributable to KPMG US."

**B.** **The Amended Complaint Relies on Conclusory Allegations**

To the extent the Amended Complaint refers separately to Deloitte U.S., virtually all of its assertions violate Rule 8 because they merely recite legal conclusions without stating supporting facts. *See Iqbal*, 556 U.S. at 678; *Ruston*, 610 F.3d at 59. For example, the assertions that Deloitte U.S. "control[ed] DTTC's audit decisions" (Am. Compl. ¶ 3; *see id.* ¶¶ 32, 53, 218) or that Deloitte U.S. "caused materially false and misleading statements to be made" (*id.* ¶ 52;

*see id.* ¶¶ 8, 187) are insufficient because they do nothing more than recite "legal conclusion[s] couched as [] factual allegation[s]." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see Alstom*, 406 F. Supp. 2d 433, 501-02 (allegations that defendants were "in positions to control and did control" were conclusory). Despite plaintiffs' access to ChinaCast's records, the pleading fails to specify how, when, or in what manner Deloitte U.S. purportedly exercised "control" over DTTC. (*See* Page 2, *supra*.)

Similarly, the assertions that Deloitte U.S. was "integrally involved" in the ChinaCast audits (*id.* ¶ 3, 8; *see id.* ¶¶ 32, 252) and "had the final word on all US GAAP matters" (*id.* ¶¶ 53, 59), or that DTTC "could not have signed off" on ChinaCast's financial statements "without the approval of Deloitte US" (*id.* ¶ 53; *see id.* ¶¶ 59, 187, 219) are mere "labels and conclusions" bereft of facts, which therefore do not suffice to state a claim under Rule 8. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## II.     THE AMENDED COMPLAINT FAILS TO PLEAD A SECTION 20(a) CLAIM

The Amended Complaint's Second Cause of Action asserts a so-called "control person" claim against Deloitte U.S. under Section 20(a) of the Exchange Act. The elements of a control person claim are "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Even assuming that the Amended Complaint had properly pleaded the first element, a primary violation by DTTC (which Deloitte U.S. denies), the Section 20(a) claim should be dismissed for failure to plead any of several remaining elements of the claim.

### A.     The Amended Complaint Fails to Plead Control

To state a claim under Section 20(a), a pleading must allege that the defendant exercised both (1) general control over the primary violator and (2) actual control over the transaction in

62652111_1

question.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 425 (S.D.N.Y. 2010)

(Marrero, J.).  The Amended Complaint does not adequately plead either.

### 1. The Amended Complaint fails to plead general control

General control is "the power to direct or cause the direction of the management and

policies of [the primary violator], whether through the ownership of voting securities, by

contract, or otherwise."  *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996)

(quoting 17 C.F.R. § 240.12b-2).  Courts have rejected Section 20(a) claims even where the

allegations of general control included part ownership of the primary violator and an ability to

appoint its directors.  *See Alstom*, 406 F. Supp. 2d at 492-93 (defendant being part owner and

appointing board members of primary violator's parent held insufficient to plead control); *In re*

*Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458-59 (S.D.N.Y. 2005) (Conner,

J.) (defendant's owning thirty percent of primary violator, appointing three board members, and

"instruct[ing]" it to enter into transactions held insufficient).

The Amended Complaint contains no allegation – nor could it – that Deloitte U.S. owns

or manages DTTC or that, by contract or otherwise, Deloitte U.S. has the power to control

DTTC.  Courts in this and other districts have repeatedly rejected attempts to hold liable one

member firm in an international network for acts by other member firms based upon bare

assertions of "control" unsupported by specific factual allegations.  "Member firms in an

international accounting association are not part of a single firm and are neither agents nor

partners of other member firms simply by virtue of using the same brand name."  *Nuevo Mundo*

*Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948, at *3

(S.D.N.Y. Jan. 22, 2004) (Daniels, J.) (dismissing claims against U.S. firm based on audits

conducted by a network member firm in Peru); *see In re Asia Pulp & Paper Sec. Litig.*, 293 F.

Supp. 2d 391, 396 (S.D.N.Y. 2003) (Sprizzo, J.) (conclusory allegations of global membership

entity's control over member firm insufficient where "plaintiffs rely solely on the 'one-firm,' unified-company theory, which has been rejected by courts in other contexts").[10]

### 2. The Amended Complaint fails to plead control over the ChinaCast audits

A Section 20(a) claim must also allege that the control person exercised "actual control over the transaction at issue."  *Anwar*, 728 F. Supp. 2d at 425; *see H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009) (Jones, J.) ("[T]he Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the transaction in question." (quoting *Alstom*, 406 F. Supp. 2d at 487)); *see also In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 167 (S.D.N.Y. 2012) (Pauley, J.) (dismissing 20(a) claims where "[the defendant's] alleged control over the deceptive scheme does not imply that he controlled [the primary violators'] deceptive statements").

The Amended Complaint fails to plead that Deloitte U.S. had actual control over the audits of ChinaCast.  Although the Amended Complaint does conclusorily allege that Deloitte U.S. "was integrally involved with the audits, including providing technical expertise and ultimate review related to all US GAAP issues"  (Am. Compl. ¶ 8),  and that "DTTC forwarded to ChinaCast written comments made by Deloitte US representatives on ChinaCast's draft filings

---

10.   *See also, e.g.*, *Anwar*, 728 F. Supp. 2d at 459 (Marrero, J.) ("Plaintiffs' theory of general control is not supported by the case law. A principal auditor's control of its agent auditor must come in a more focused form."); *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329 (DC), 2008 WL 5110919, at *5 (S.D.N.Y. Nov. 26, 2008) (Chin, J.) (allegations that RSM International controlled a network member firm's ability to use the RSM brand name and promulgated an audit manual and audit policies were insufficient "to adequately allege that RSM International had control over the audits performed by RSM Top-Audit.");  *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 571 (D.N.J. 2005) ("Many courts addressing similar claims, 'have required plaintiffs to plead substantially more than a bare bones unified company theory.'" (quoting *Skidmore Energy, Inc. v. KPMG LLP*, No. 03-cv-2138-B, 2004 WL 3019097, at *4 (N.D. Tex. Dec. 28, 2004))); *In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 21488087, at *8-10 (S.D.N.Y. June 25, 2003) (Cote, J.) (dismissing claim against global membership entity based on theory that it was the principal of its U.S. member firm); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 661-63 (S.D.N.Y. 1997) (Kram, J.) (global membership entity did not control member firm); *Reingold v. Deloitte Haskins & Sells*, 599 F. Supp. 1241, 1252-53 (S.D.N.Y. 1984) (Goettel, J.) (U.S. member firm of the Deloitte Haskins & Sells network did not control the Australian member firm).

13

with the SEC and made clear that those comments needed to be addressed before DTTC could approve the filings" (*id.* ¶ 53), these allegations, even assuming their truth, at most show the provision of expertise, advice, or review.  The law is clear that allegations of such activities, even if assumed to be true, do not amount to factual allegations of "control."  As the Second Circuit held in *In re Lehman Brothers Mortgage-Backed Securities Litigation*, 650 F.3d 167, 187 (2d Cir. 2011), "providing advice that the banks chose to follow does not suggest control."

Similarly, the allegation in Paragraph 54 that Deloitte U.S. consulted with DTTC on accounting for pre-paid expenses and assisted in addressing SEC questions concerning that accounting amounts, at most, to an assertion that Deloitte U.S. had the ability to advise or influence DTTC with respect to certain accounting which, in any event, was unrelated to the fraud allegedly perpetrated at ChinaCast.  (*See* Page 7, n.8, *supra*.)  This does not come close to approaching the allegations needed to adequately plead control.  As Judge Marrero held in *Alstom*, 406 F. Supp. 2d at 487, "exercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control."  That is because "[a]llegations of influence are not the same as the power to direct the management and policies of the primary violator." *Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 645 (S.D.N.Y. 2004) (Casey, J.), *amended on reconsideration in part on other grounds*, No. 99 Civ. 0793 (RCC), 2004 WL 1781148 (S.D.N.Y. Aug 10, 2004).

To the extent Paragraph 54 couples the consultation allegations with bare assertions that Deloitte U.S. "directed" DTTC with respect to ChinaCast's original accounting for pre-paid expenses, "approved" ChinaCast's filing changing its accounting, and generally "gave directions" and "had the last word on all US GAAP related issues," it fares no better, since all

14

these assertions are similarly unsupported by any facts explaining how or or in what manner the alleged "direction" or "approval" occurred.  In any event, they fail to demonstrate that the Chinese firm was unable to make its own decisions about performing its own audits and issuing its own reports.

Such conclusory allegations of control are insufficient to withstand a motion to dismiss. (*See* Section I.B, *supra*.)  Thus, in *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp. 2d 429, 457-58 (S.D.N.Y. 2005),[11] Judge Conner dismissed a claim that Verizon controlled Flag Telecom Holding Group, Ltd. ("Flag") despite allegations that: (i) Verizon was Flag's largest stockholder with thirty percent ownership; (ii) Verizon could appoint three of Flag's nine directors; (iii) "Flag was 'instructed' by Verizon to purchase capacity on the Euroring network for resale to Verizon"; and (iv) "'F[lag] was strong-armed into booking capacity with Verizon . . . that F[lag] didn't need and Verizon never provided."  These allegations failed to plead control because the allegation that Verizon "instructed" Flag "does not indicate that Flag was somehow forced to follow that instruction," and the allegation that Verizon "strong-armed" Flag into purchasing capacity provided "no indication that Flag's management or Flag's Board of Directors could not have simply declined to comply with Verizon's demand."  *Id.* at 459.  Here, the pleading similarly fails to plead any fact at all showing how or why DTTC could not have simply declined to do whatever Deloitte U.S. allegedly "approved" or "directed."

Similarly, in *In re Blech Securities Litigation*, 961 F. Supp. 569, 587 (S.D.N.Y. 1997), Judge Sweet dismissed claims that Bear, Stearns & Co. ("Bear Stearns") allegedly controlled the

---

11. *Flag Telecom* concerned control person claims under Section 15 of the Securities Act of 1933.  The Second Circuit uses the same analysis for the control elements of Section 15 and Section 20(a) claims.  *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 185-86 (2d Cir. 2011).

broker dealer David Blech, for whom Bear Stearns cleared fraudulent trades.  Despite conclusory allegations that Bear Stearns "'directed,' 'arranged' and 'funded' the 'contrived' sales," and "demanded that [Blech] sell Blech Securities," *id.* at 578-79, Judge Sweet held that the complaint failed to plead that Bear Stearns actually had the power to direct Blech to conduct the fraudulent transactions.  *Id.* at 586-87.

In *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 579 (S.D.N.Y. 2012), Judge Daniels dismissed a Section 20(a) claim against a director of the primary violator despite allegations that an Investors' Rights Agreement granted the director "*veto power* over both extraordinary and day-to-day corporate transactions." (Emphasis in original.)  Judge Daniels found that the alleged veto power had terminated before the transactions at issue occurred, so control was not properly alleged.  *Id.*  Here, the Amended Complaint makes no allegation of any agreement between Deloitte U.S. and DTTC giving Deloitte U.S. any power over DTTC's audits at any time, and fails to allege any facts demonstrating that DTTC lacked the power or ability to simply decline to do whatever Deloitte U.S. allegedly approved.

The  Amended Complaint's use of synonyms for control – for example, by alleging that Deloitte U.S. "provided sign-off before the Company filed financial information" (*id.* ¶ 32), "gave directions to DTTC" (*id.* ¶ 54), and that "the Company's filings were subject to sign-off by Deloitte US" (*id.* ¶ 187) – is similarly deficient, as such synonyms similarly lack the necessary factual support.  Indeed, all these allegations are mere legal conclusions that do not suffice to state a claim.  *See Iqbal*, 556 U.S. at 678; *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005) (Lynch, J.) ("Conclusory allegations of control are insufficient as a matter of law.").  The Amended Complaint's allegations of control are at least as conclusory as the allegations in *Flag Telecom* that Verizon "instructed" or "strong-

armed" Flag, in *Blech* that Bear Stearns "directed" or "demanded" that Blech sell securities, or in *Duoyan Global Water Inc.* that the director had veto power over certain transactions. The pleading here similarly fails to allege any fact to show that the Chinese firm lacked the ability to perform its own audits and to issue its own reports regardless of what Deloitte U.S. allegedly "directed" or "approved."

### B.   The Amended Complaint Fails to Plead Culpable Participation

The Second Circuit has repeatedly stated that culpable participation is a necessary element of a Section 20(a) claim. *See, e.g.*, *Solow v. Citigroup, Inc.*, 507 F. App'x 81, 83 (2d Cir. 2013); *In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 186 (2d Cir. 2011); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Thus, in *Anwar*, 728 F. Supp. 2d at 425, Judge Marrero noted that the need to plead culpable participation has "largely been settled by the Second Circuit in numerous decisions." Similarly, in *Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc.*, No. 09 Civ. 3708, 2012 WL 6168151, at *2 (S.D.N.Y. Dec. 11, 2012), Judge Griesa observed: "Although the requirement has indeed only been articulated [by the Second Circuit] in dicta, it is clearly worded and has been reiterated without reservation in at least five recent Second Circuit opinions." The overwhelming majority of courts in this district agree that culpable participation must be pleaded in order to state a Section 20(a) claim.[12]

---

12.   *See, e.g.*, *McIntire v. China MediaExpress Holdings, Inc.*, 927 F.Supp.2d 105, 121 & n. 4 (S.D.N.Y. 2013) (Marrero, J.); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 482-83 (S.D.N.Y. 2013) (Jones, J.); *Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.*, No. 09 Civ. 3708, 2012 WL 6168151, at *1-2 (S.D.N.Y. Dec. 11, 2012) (Griesa, J.); *Pa. Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 368 (S.D.N.Y. 2012) (Pauley, J.), *reconsideration denied* (Aug. 8, 2012); *Bayerische Landesbank, N.Y. Branch v. Barclays Capital, Inc.*, 902 F. Supp. 2d 471, 474 (S.D.N.Y. 2012) (Stanton, J.); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 376 (S.D.N.Y. 2011) (McMahon, J.); *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (Sweet, J.); *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 411 (S.D.N.Y. 2010) (Sand, J.); *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246-47 (S.D.N.Y. 2006) (Karas, J.); *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005, at *5 (S.D.N.Y. Aug. 8, 2005) (Lynch, J.). *But see In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 307-10 (S.D.N.Y. 2005) (Kaplan, J.).

17

Culpable participation "must be plead with the same particularity as scienter under section 10(b)," and the Reform Act's heightened pleading standards apply. *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) (Karas, J.); *see Anwar*, 728 F. Supp. 2d at 413. The Reform Act requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A complaint meets this requirement "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007); *see In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 481 (S.D.N.Y. 2013) (Jones, J.) (rejecting Section 20(a) claims where alleged red flags did not raise a strong inference of scienter, and instead supported the stronger inference of "an intricate and well-concealed fraud perpetrated by a very small group of insiders"). To plead an auditor's scienter, the state of mind must "approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 640 (2d Cir. 2012) (quoting *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000)).

Although the Amended Complaint baldly asserts "knowing or reckless" conduct (Am. Compl. ¶ 52; *see, e.g.*, *id.* ¶¶ 61, 68, 82, 92, 116, 120), these allegations are, once again, wholly conclusory. The pleading fails to "state with particularity facts giving rise to a strong inference," 15 U.S.C. § 78u-4(b)(2), that Deloitte U.S. acted with a state of mind "approximating an actual intent to aid in the fraud." *Rothman*, 220 F.3d at 98. As in *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 138 (S.D.N.Y. 2013), "[p]laintiffs plead only general and conclusory allegations against . . . Deloitte U.S., failing to set forth particularized facts

18

establishing [its] culpable participation."  Accordingly, the claim must be dismissed for failure to adequately plead culpable participation.

## III.   THE AMENDED COMPLAINT FAILS TO STATE A SECTION 18 CLAIM

The Amended Complaint asserts a claim (Fourth Cause of Action) against all Defendants under Section 18 of the Exchange Act.  (Am. Compl. ¶¶ 234-247.)  To state a claim under Section 18, it is necessary to plead that (1) a false or misleading statement was contained in a document filed pursuant to the Exchange Act; (2) the defendant made or caused to be made the false or misleading statement; (3) the plaintiff actually relied on the false statement; and (4) the reliance caused loss to the plaintiff.  *Alstom*, 406 F. Supp. 2d at 478.  As noted above, the Reform Act applies to the Section 18 claim, as does Rule 9(b), because the Amended Complaint is replete with allegations of fraud and recklessness.  *Id.* at 483 nn. 45 & 46.[13]

### A.   Deloitte U.S. Did Not "Cause" ChinaCast to Make Any Statement

The Amended Complaint does not even attempt to allege that Deloitte U.S. made any statement, much less a misstatement, about ChinaCast.  To the extent that the pleading asserts that "Deloitte" is liable under Section 18 for causing ChinaCast to misstate its financial statements by virtue of the fact that "Deloitte" was ChinaCast's auditor (Am. Compl. ¶¶ 197, 199, 203), the claim should be dismissed for impermissible group pleading.  (*See* Section I.A, *supra*.)

Moreover, courts have rejected the argument that aiding a client in preparing its financial statements and providing an opinion on the client's statements can render an auditor liable under Section 18 for "causing" the client's statements.  In *Deephaven Private Placement Trading, Ltd.*

---

13.  This is so despite Plaintiffs' self-serving disclaimer, prefacing the Section 18 cause of action, that they "expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct."  (Am. Compl. ¶ 235.)  *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) ("Plaintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness.").

*v. Grant Thornton & Co.*, 454 F.3d 1168, 1177 (10th Cir. 2006), the Tenth Circuit explained that auditors do not, "by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein." *Id.* at 1174.  Accordingly, the court rejected the argument that auditors "caused" their clients to make statements, stating that "we are unpersuaded by [the argument] in light of our analysis regarding the relationship auditors have with a company's financial statements." *Id.* at 1177.

Similarly, in *In re Adelphia Communications Corp. Securities & Derivative Litigation*, No. 03 MD 1529 (LMM), 2007 WL 2615928, at *12 (S.D.N.Y. Sept. 10, 2007), Judge McKenna dismissed Section 18 claims against a law firm because "[i]n no sense can an attorney giving legal advice to a person or corporation making a statement, or assisting in its drafting, be understood to 'cause' the statement to be made"; rather, the meaning of "cause to be made" is limited "to its natural one: describing actors who control the speaker in some way."

The professional auditing standards confirm that an auditor's role in performing an audit is to express an opinion on the financial statements of a client and that the client's statements are the client's responsibility:

> The financial statements are management's responsibility. The auditor's responsibility is to express an opinion on the financial statements.

Am. Inst. of Certified Pub. Accountants, Statement on Auditing Standards AU § 110.03 (available at http://pcaobus.org/Standards/Auditing/Pages/AU110.aspx); *see Dronsejko v. Grant Thornton*, 632 F.3d 658, 663 (10th Cir. 2011) ("A company's management—not the auditor—is responsible for the information contained in its financial statements and the propriety of its underlying accounting policies, including compliance with GAAP.").

In any event, Deloitte U.S. was not ChinaCast's auditor.   Therefore, Deloitte U.S. is even further removed from ChinaCast's statements than was the auditor in *Deephaven* or the law firm

62652111_1

giving advice to its client in *Adelphia*.  The pleading provides no basis for concluding that Deloitte U.S. "caused" ChinaCast to make any statement at all.

**B.      The Amended Complaint Fails to Plead Reliance**

The Section 18 claim is also subject to dismissal because conclusory assertions of actual reliance are insufficient under applicable pleading standards.  In the Amended Complaint, plaintiffs assert that they "actually read, reviewed and relied on the false and materially misleading statements" (Am. Compl. ¶ 242; *see id.* ¶¶ 240-241), but fail to provide any particulars as to which individuals read the misstatements, when they read them, when they relied on them in purchasing ChinaCast stock, how the misstatements induced their reliance, or why or how such reliance was reasonable in the circumstances.  These facts, which are all uniquely in plaintiffs' possession, are necessary to state a claim because boilerplate assertions of reliance are insufficient.  *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386 (S.D.N.Y. 2011) (Stein, J.) (boilerplate assertions of reliance are insufficient without "supporting factual matter indicating how plaintiffs relied on the alleged misrepresentations").

**C.      There Is No Section 18 Liability for Statements on Part I of Form 10-Q**

To the extent plaintiffs' Section 18 claim is based upon alleged misstatements contained in Part I of ChinaCast's Forms 10-Q, the claim is deficient for the additional reason that such statements are explicitly excluded from Section 18 liability.  *See* 17 C.F.R. § 240.13a-13(d) ("[T]he financial information required by Part I of Form 10-Q shall not be deemed to be 'filed' for the purpose of Section 18 of the [Exchange] Act or otherwise subject to the liabilities of that section of the Act . . . ."); *Alstom*, 406 F. Supp. 2d at 479 (financial information on Form 10-Q exempt from Section 18); *In re Stone & Webster, Inc., Sec. Litig.*, 253 F. Supp. 2d 102, 135 (D. Mass. 2003) (same), *aff'd in part, vacated in part on other grounds*, 414 F.3d 187 (1st Cir. 2005); *In re Digi Int'l, Inc. Sec. Litig.*, 6 F. Supp. 2d 1089, 1103 (D. Minn. 1998) (dismissing

21

Section 18 claims based on alleged misstatements in Forms 10-Q), *aff'd*, 14 F. App'x 714 (8th Cir. 2001); *see also Heit v. Weitzen*, 402 F.2d 909, 915-16 (2d Cir. 1968) (recognizing SEC's authority to deem documents "filed" for purposes of Section 18 liability).  All of the alleged misstatements in ChinaCast's quarterly filings were contained in Part I of ChinaCast's Forms 10-Q.  (Am. Compl.  ¶¶ 240-241.)  Accordingly, those quarterly statements cannot form the basis of a Section 18 claim as a matter of law.

## IV.    THE AMENDED COMPLAINT FAILS TO PLEAD A COMMON LAW FRAUD CLAIM

The common law fraud claim must also be dismissed.  Under New York law, the elements of fraud are that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank*, 57 F.3d 146, 152 (2d Cir. 1995)).  Under Rule 9(b), the pleading "must specify the statements contended to be fraudulent . . . ; the time and place of each such fraudulent statement and the person who made (or in case of the omission did not make) the statement; and the content of the fraudulent statement, how it was misleading and the manner in which it was relied upon by the plaintiff."  *Pasternack v. Lab. Corp. of Am.*, No. 10 Civ. 4426 (PGG), 2011 WL 3478732, at *5 (S.D.N.Y. Aug. 1, 2011) (Gardephe, J.).  The facts alleged must also "give rise to a strong inference of fraudulent intent."  *Eternity Global*, 375 F.3d at 187 (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

The Amended Complaint nowhere alleges that Deloitte U.S. made any "material false representation."  *Eternity Global*, 375 F.3d at 186-87.  Further, as demonstrated in Section I.A

above, "Rule 9(b) is not satisfied where the Complaint lumps several defendants together and fails to specify what each defendant said." *Naughright v. Weiss*, 826 F. Supp. 2d 676, 694 (S.D.N.Y. 2011) (Sweet, J.) (dismissing fraud claims where there were "no specific allegations describing which statements the . . . Defendants allegedly made, where they were made, when they were made or why they were fraudulent"). Moreover, the pleading fails to adequately plead scienter as part of the common law fraud claim because it contains no "particularized facts to support the inference that [Deloitte U.S.] acted recklessly or with fraudulent intent." *Eternity Global*, 375 F.3d at 187 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). (See also Section II.B, *supra*.)

Finally, the pleading fails to allege the plaintiffs' actual, reasonable reliance. *See Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011). The conclusory assertions that plaintiffs understood and relied upon the "fact" that Deloitte U.S. was "involved in" and "control[led]" the ChinaCast audits (Am. Compl. ¶ 252) is unavailing because they fail to allege how such reliance occurred. *See Sec. Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000) (where complaint contains no allegations that the injured parties ever received information from defendant, plaintiffs "cannot establish reliance under New York law"); *V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253, 261-62 (S.D.N.Y. 2012) (Ramos, J.) (plaintiff failed to "allege that the [defendants] made any materially false representations *to* [plaintiff], on which [plaintiff] relied to its detriment").

**<u>Conclusion</u>**

Plaintiffs have already amended their pleading once and, despite having access to

ChinaCast's records through its Chief Financial Officer, plaintiff Douglas Woodrum, plaintiffs

declined an opportunity granted to them by the Court at the October 1 pre-motion conference to

amend a second time.  That decision followed the parties' exchange of pre-motion letters

concerning deficiencies of the Amended Complaint and an extensive discussion of those

deficiencies during the October 1 conference.  Accordingly, the claims against Deloitte U.S.

should be dismissed with prejudice.

Dated: New York, New York
      November 1, 2013

                          Respectfully submitted,

                          HUGHES HUBBARD & REED LLP

                          By:  /s/ William R. Maguire
                                William R. Maguire
                                Savvas A. Foukas
                                Jesse James
                          One Battery Park Plaza
                        New York, New York 10004
                        (212) 837-6000
                        *Attorneys for Deloitte & Touche LLP*