UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPECIAL SITUATIONS FUND III QP, L.P. et al.,

                Plaintiffs,

                v.

DELOITTE TOUCHE TOHMATSU CPA, LTD. et al.,

                Defendants.

No. 13-cv-01094 (ER)

Judge Edgardo Ramos

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT DELOITTE & TOUCHE LLP'S
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

William R. Maguire
Savvas A. Foukas
Jesse James
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Attorneys for Deloitte & Touche LLP*

## <u>TABLE OF CONTENTS</u>

Argument ...................................................................................................................1

I.   THE AMENDED COMPLAINT FAILS TO PLEAD A SECTION 20(a) CLAIM ............1

    A.   The Amended Complaint Fails to Plead Control .....................................................2

        1.   The Amended Complaint Fails to Plead that Deloitte U.S. Had Control of DTTC .................................................................................2

        2.   The Amended Complaint Fails to Plead that Deloitte U.S. Controlled the ChinaCast Audit ..............................................................3

    B.   The Amended Complaint Fails to Plead Culpable Participation .................................................................................................4

II.   THE AMENDED COMPLAINT FAILS TO STATE A SECTION 18 CLAIM ...............5

    A.   The Amended Complaint Fails to Plead that Deloitte U.S. "Caused" ChinaCast to Make Any Statement ...................................6

    B.   The Amended Complaint Fails to Plead Reliance ...................................................7

    C.   The Amended Complaint Fails to Plead a Section 18 Claim Based on the Form 10-Q Filings ..............................................................8

III.   THE AMENDED COMPLAINT FAILS TO PLEAD COMMON LAW FRAUD ...........9

IV.   LEAVE TO AMEND SHOULD BE DENIED ...................................................................9

Conclusion ...............................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Adelphia Communications Corp. Securities & Derivative Litigation*, No. 03 MD 1529 (LMM), 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ...................................7

*Allstate Insurance Co. v. Countrywide Financial Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011) ..............................................................................................9

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ...................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................2

*Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333 (2d Cir. 2011) ...........................................9

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) ......................1

*In re Blech Securities Litigation*, 961 F. Supp. 569 (S.D.N.Y. 1997) ...........................................4

*In re Cavalry Construction, Inc.*, 496 B.R. 106 (S.D.N.Y. 2013) ..................................................5

*Deephaven Private Placement Trading, Ltd v. Grant Thornton & Co.*, 454 F.3d 1168 (10th Cir. 2006)........................................................................................................6

*In re Flag Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005) ........................................................................................................4

*Gould v. Winstar Communications, Inc.*, 692 F.3d 148 (2d Cir. 2012)..........................................8

*Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012) ..................................4

*In re IMAX Securities Litigation*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008)..............................6

*International Fund Management S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368 (S.D.N.Y. 2011) ........................................................................................................7

*LaPierre ex. rel. Town of Yorktown v. DiBartolo*, No. 12 Civ. 1996, 2013 WL 656313 (S.D.N.Y. Feb. 21, 2013)........................................................................................9

*Longtop Financial Technologies Ltd. Securities Litigation*, 939 F. Supp. 2d 360, 377 (S.D.N.Y. 2013)........................................................................................................6

*McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 138 (S.D.N.Y. 2013) ........................................................................................................6

*Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328 (D. Conn. 2011)........................................................................................................5

*In re Quintel Entertainment Inc. Securities Litigation*, 72 F. Supp. 2d 283
   (S.D.N.Y. 1999) ...........................................................................................................3

*Sheldon v. Khanal*, 396 F. App'x 737 (2d Cir. 2010) ............................................................2

*Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350 (S.D.N.Y. 2009) .....................................9

*United States v. Oshatz*, 912 F.2d 534 (2d Cir. 1990) .......................................................5

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, 672 F. Supp. 2d 596
   (S.D.N.Y. 2009) ...........................................................................................................7

*Wilson v. Merrill Lynch & Co.*, 671 F.3d 120 (2d Cir. 2011) ................................................9

**STATUTES AND RULES**

15 U.S.C. § 78u-4 ..................................................................................................................2, 5

Fed. R. Civ. P. 9(b) ..............................................................................................................5

The Opposition Brief offers nothing to support any claim against Deloitte U.S. beyond the conclusory assertions of the Amended Complaint.  In particular, the Opposition Brief fails to cite any precedent for sustaining a claim based on bare assertions of the elements of a claim and fails adequately to address the controlling cases holding that such pleading is insufficient as a matter of law.  Where plaintiffs have already amended once and expressly declined a second opportunity to amend and where the Opposition Brief fails to provide any basis for any further amendment, dismissal should be with prejudice.

<u>Argument</u>

**I.      THE AMENDED COMPLAINT FAILS TO PLEAD A SECTION 20(a) CLAIM**

To state a Section 20(a) claim against Deloitte U.S., the Amended Complaint must plead a primary violation by DTTC[1] as well as three additional elements: (1) that Deloitte U.S. controlled DTTC; (2) that Deloitte U.S. controlled the ChinaCast audit; and (3) that Deloitte U.S. "culpably participated" in the alleged wrongdoing.  The Opposition Brief acknowledges (1) and (2), but the Amended Complaint fails to plead them adequately.  The Opposition Brief tries to avoid (3) altogether by arguing that "culpable participation" need not be pleaded at all, but fails to provide any valid reason to depart from clear indications to the contrary by the Second Circuit, not to mention the overwhelming majority of courts in this district specifically holding that culpable participation is a necessary element of a Section 20(a) claim.  Notably, the Amended Complaint fails to plead any fact even suggesting that Deloitte U.S. culpably participated in the ChinaCast fraud.

---

1.   The absence of a primary violation is another basis for dismissing a Section 20(a) claim against an alleged "control person."  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).  We understand that DTTC will soon be filing a motion to dismiss which, if granted, would also require dismissal of the claims against Deloitte U.S. as they are entirely derivative of those against DTTC.

A.      **The Amended Complaint Fails to Plead Control**

1.      ***The Amended Complaint Fails to Plead that
               Deloitte U.S. Had Control of DTTC***

As demonstrated in Deloitte U.S.'s opening brief (Mov. Br. at 12), the Amended

Complaint does not contain a single well-pleaded fact to show that Deloitte U.S. controlled

DTTC.  Like the pleading, the Opposition Brief rests entirely on conclusory allegations.  It

asserts that Deloitte U.S. "controlled" DTTC, "had the last word" on DTTC's audits, and that its

"approval was required" (Am. Compl. ¶¶ 53, 54, 219), but fails even to acknowledge the

standard pleading rule that such "legal conclusion[s] couched as . . . factual allegation[s]" are not

credited as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation

marks omitted).  Applying this rule, in *Iqbal*, the Supreme Court held allegations that Attorney

General John Ashcroft was the "principal architect" of a discrimination policy, and that FBI

Director Robert Mueller was "'instrumental' in adopting and executing it" were "bare assertions

[that] amount to nothing more than a 'formulaic recitation of the elements'" of a claim.  *Id.* at

680-81.[2]  Here, likewise, synonyms for the word "control," such as "had the last word" and

---

2.  The Opposition Brief's argument that it is not necessary to plead admissible evidence (Opp. Br. at 8) misses the
    point that it is necessary to plead *facts*.  As the Second Circuit held, in rejecting this same argument in *Sheldon
    v. Khanal*, 396 F. App'x 737, 739 (2d Cir. 2010): "Contrary to plaintiffs' argument, the district court did not
    improperly require them to adduce evidence in support of their claims at the pleading stage; rather, the district
    court carefully and correctly applied the plausibility requirement of *Twombly* and *Iqbal*, as well as other
    applicable legal standards, in analyzing plaintiffs' allegations and theories and finding them insufficient to state
    a claim."  And, contrary to the Opposition Brief's suggestion that properly pleading a claim may await
    discovery (Opp. Br. at 8-9), Congress expressly prohibits discovery unless a plaintiff first pleads a viable claim.
    *See* 15 U.S.C. § 78u-4(b)(3)(B).  Moreover, the suggestion that discovery would somehow support a claim is
    belied by the fact that plaintiffs include ChinaCast insiders, who already have access to the company's
    documents.  (Mov. Br. at 5-6.)

"approval was required," do not substitute for allegations of fact – the who, what, where, when – that is necessary to state a claim.[3]

### 2.   The Amended Complaint Fails to Plead that Deloitte U.S. Controlled the ChinaCast Audit

Nor does the Opposition Brief point to any well-pleaded facts to support the conclusion that Deloitte U.S. exercised "actual control over the transaction at issue," i.e., the ChinaCast audits. *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 425 (S.D.N.Y. 2010) (Marrero, J.). Again, the Amended Complaint repeatedly posits that Deloitte U.S. "controlled" or "had the final word" or "final say" on ChinaCast audits, but it fails to explain how that is the case, or to plead specific facts recounting a single instance when that type of "control" actually occurred. The closest that the Amended Complaint comes to alleging any facts against Deloitte U.S. are the allegations that Deloitte U.S. "reviewed" ChinaCast's SEC filings (Am. Compl. ¶ 32), provided "written comments" on draft SEC filings (*id.* ¶ 53), and, in one instance, was involved in discussing with SEC staff an accounting issue that plaintiffs concede is unrelated to the misstatements alleged in the Amended Complaint (Opp. Br. at 7 n.2), and "reviewed and approved an amendment to the 2010 Form 10-K" related to that issue. (Am. Compl. ¶ 54.) These allegations, however, plead nothing more than providing expertise. As explained in Deloitte U.S.'s opening brief (Mov. Br. at 13-17), and as the Opposition Brief appears to acknowledge, merely alleging "the provision of expertise, advice or review" is insufficient to

---

3.   Plaintiffs' reliance on *In re Quintel Entertainment Inc. Securities Litigation*, 72 F. Supp. 2d 283 (S.D.N.Y. 1999) (Conner, J.), is misplaced. In *Quintel*, the defendants were insiders of the primary violator. *Id.* at 287. The relationship between insiders and the company they manage is not even remotely analogous to the relationship between two legally independent accounting firms with no overlapping ownership or management.

plead control.[4]  (Opp. Br. at 21 (*quoting* Mov. Br. at 14).)

Without more, the Opposition Brief fails to distinguish the cases that Deloitte U.S. cited or to point to anything in the Amended Complaint that surpasses the allegations of control that those cases rejected.  For example, there is nothing in the Amended Complaint to match, let alone surpass, the allegations that Judge Sweet rejected in *In re Blech Securities Litigation*, 961 F. Supp. 569, 578-79 (S.D.N.Y. 1997) (rejecting allegations that Bear Stearns "'directed,' 'arranged' and 'funded' the 'contrived' sales," "demanded that [Blech] sell Blech Securities," and "advised Blech . . . that he must sell securities").  The Opposition Brief does not even attempt to address *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005), in which Judge Conner rejected allegations that Verizon owned 30% of the company that it allegedly controlled, that Verizon appointed three of the company's nine directors, and that it "instructed" the company to enter into the allegedly controlled transactions. *Id.* at 457-59.  And the Opposition Brief misconstrues *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547, 579 (S.D.N.Y. 2012), where Judge Daniels rejected allegations that a director exercised control by way of a contractual veto because the veto had expired.  *Id.*  The Opposition Brief cannot distinguish these cases because the Amended Complaint fails to plead any *facts* to show that Deloitte U.S. exercised control over the ChinaCast audits.

### B.    The Amended Complaint Fails to Plead Culpable Participation

The Opposition Brief asks the Court to reject as *dicta* the Second Circuit's repeated statements that culpable participation is an element of a Section 20(a) control person claim. (Opp. Br. at 22-23.)  As the Second Circuit has said, however, "in some contexts expressions of

---

4.   Bare assertions in the Opposition Brief suggesting that Deloitte U.S. was ChinaCast's auditor ("Deloitte US and DTTC conducted the audits together" (Opp. Br. at 15); "Deloitte US fail[ed] to conduct even the most basic steps of an audit" (*id.* at 24)), should be ignored, as they are entirely untethered from the Amended Complaint itself, which makes no such allegations.

views by an appellate court must be regarded as the law of the circuit, even though not an announcement of a holding or even of a necessary step in the reasoning leading to a holding." *United States v. Oshatz*, 912 F.2d 534, 540 (2d Cir. 1990).  Thus, "a federal district court is required to give great weight to the pronouncements of its Court of Appeals, even though those pronouncements appear by way of dictum."  *In re Cavalry Const., Inc.*, 496 B.R. 106, 115 (S.D.N.Y. 2013) (Karas, J.) (citation omitted).  This is surely true here, where the Second Circuit has repeatedly stated, most recently in 2013, 2011, and 2007, that culpable participation is a necessary element of a Section 20(a) claim.  (Mov. Br. at 17.)  The overwhelming majority of judges in this district agree.[5]  (Mov. Br. at 17 n.12.)

Under the Private Securities Litigation Reform Act, culpable participation must be pleaded with particularity, which requires facts raising a strong inference that Deloitte U.S. culpably participated in the fraud.  (Mov. Br. at 18.)  The real reason the Opposition Brief seeks to avoid the culpable participation prong of Section 20(a) is that the Amended Complaint contains no allegations to support the "strong inference" of scienter that the Reform Act requires. (Opp. Br. at 23-24.)  Indeed, the Opposition Brief cannot cite anything to comply with the Reform Act or with Rule 9(b) of the Federal Rules of Civil Procedure because the Amended

---

5.   The argument that the text of Section 20(a) cannot be read to include culpable participation as an element (Opp. Br. at 22), is not only wrong, *see, e.g.*, *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 332 (D. Conn. 2011), but is nothing more than an attempt to reargue a point that has been resolved by numerous courts in this district in a manner contrary to plaintiffs' preferred reading.

Complaint does not allege a single fact to show that Deloitte U.S. was a culpable participant in a fraud.[6]  (Mov. Br. at 18-19.)

## II.   THE AMENDED COMPLAINT FAILS TO STATE A SECTION 18 CLAIM

### A.   The Amended Complaint Fails to Plead that Deloitte U.S. "Caused" ChinaCast to Make Any Statement

The Opposition Brief fails to cite any case supporting its argument that an auditor "causes" a client to make statements in the client's own financial statements (much less that anyone like Deloitte U.S., which was not the auditor, does so), and fails meaningfully to address the cases that Deloitte U.S. cited to the contrary.

In particular, the Opposition Brief takes liberties with *Deephaven Private Placement Trading, Ltd v. Grant Thornton & Co.*, 454 F.3d 1168 (10th Cir. 2006).  Dismissing *Deephaven* as "not binding in this circuit" (Opp. Br. at 15), the Opposition Brief fails to address the Tenth Circuit's holding that a Section 18 claim does not give rise to liability against an auditor for "causing" a client's misstatements because a client is the master of its own statements and is not "caused" to make them by an auditor, whose role is merely to report on the client's financial statements.  454 F.3d at 1177.  This reasoning is compelling: in issuing a report on statements that another person makes, an auditor falls well short of "causing" that other person's statements.  And the allegations against Deloitte U.S. are even weaker than those found insufficient in

---

6.  "The standard for pleading auditor scienter is demanding."  *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) (Buchwald, J.).  That is because an outside professional accountant is so far removed from company insiders, who have the ability to perpetrate a fraud and to profit from it.  "An outside auditor will typically not have an apparent motive to commit fraud, and its duty to monitor an audited company for fraud is less demanding than the company's duty not to commit fraud."  *Longtop Fin. Technologies Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 377 (S.D.N.Y. 2013) (Scheindlin, J.).  Here, Deloitte U.S. is further removed from the alleged underlying fraud even than an auditor because Deloitte U.S. was not ChinaCast's auditor, and, therefore, the burden of pleading scienter against Deloitte U.S. is correspondingly even greater.  Bereft of any basis to plead scienter, the Opposition Brief falls back on the conclusory assertion that Deloitte U.S. could easily have found the fraud, if it had done a proper audit.  (Opp. Br. at 24-5.)  This is doubly insufficient – first, because Deloitte U.S. was not the auditor, and, second, because it is conclusory.  *See McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 138 (S.D.N.Y. 2013) (Marrero, J.) ("Plaintiffs plead only general and conclusory allegations against . . . Deloitte U.S., failing to set forth particularized facts establishing [its] culpable participation.").

*Deephaven.*  Deloitte U.S. was not ChinaCast's auditor and never issued a report on ChinaCast's financial statements, so concluding that Deloitte U.S. "caused" any ChinaCast misstatement would make even less sense here.

To the extent that the Opposition Brief deals with *Deephaven* at all, it confines itself to a discussion earlier in that decision concerning a separate Section 18 claim that the auditor had made a misstatement in its own report.  Because that part of *Deephaven* concerns an auditor making a misstatement in its own report, it cannot apply here, where there is no allegation that Deloitte U.S. made any statement about ChinaCast, much less that it ever issued a report.[7]

The Opposition Brief also fails to distinguish *In re Adelphia Communications Corp. Securities & Derivative Litigation*, No. 03 MD 1529 (LMM), 2007 WL 2615928, at *12 (S.D.N.Y. Sept. 10, 2007) (McKenna, J.), where the court rejected allegations that an attorney "draft[ed], prepar[ed] and review[ed] Adelphia's SEC filings" as insufficient to plead that the attorney "caused" his client's misstatements.  Where, as here, the pleading alleges nothing more than the provision of advice or the conduct of a review (*see* Page 3, *supra*), the Opposition Brief simply cannot distinguish *Adelphia*.[8]

### B.    The Amended Complaint Fails to Plead Reliance

The Opposition Brief points to boilerplate, conclusory allegations that all Section 18 plaintiffs read and relied on all the statements in all the filings.  (Opp. Br. at 17.)   That is insufficient because it fails to plead "supporting factual matter indicating how plaintiffs relied on the alleged misrepresentations."  *Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368,

---

7.   Contrary to the assertion in the Opposition Brief (Opp. Br. at 17), the Amended Complaint does not bring a Section 18 claim based on the allegation that Deloitte U.S. caused DTTC to issue a false statement.  The Section 18 cause of action enumerates each false statement that Deloitte U.S. allegedly caused to be made.  (Am. Compl. ¶¶ 238-41.)  Each alleged misstatement was made by ChinaCast, not DTTC, much less Deloitte U.S.

8.   The other case cited by the Opposition Brief, *Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*, 672 F. Supp. 2d 596 (S.D.N.Y. 2009) (Marrero, J.), did not even involve a Section 18 claim.

386 (S.D.N.Y. 2011) (Stein, J.).  The Opposition Brief's citation to *Gould v. Winstar Communications, Inc.*, 692 F.3d 148, 161 (2d Cir. 2012), is misplaced because there the court had evidence supporting the conclusion that a named individual read the misstatements and relied on them in making purchases.  *Id.*  Here, there are thirteen separate Section 18 plaintiffs, ten of them institutional plaintiffs.  Yet, there is not a single fact alleged to show "how plaintiffs relied" on the alleged misstatements, which individuals read and relied on which misstatements, or why such reliance was reasonable.  This failure to plead facts peculiarly within plaintiffs' knowledge is striking, especially in the case of those Section 18 plaintiffs who were, or were controlled by, insiders who prepared – and even signed – certain of the alleged misstatements.[9] (Mov. Br. at 5-6 nn. 5, 7.)

> ### C.     The Amended Complaint Fails to Plead a Section 18 Claim Based on the Form 10-Q Filings

The Opposition Brief concedes that there is no Section 18 liability for "financial information" included in Part I of Form 10-Q.  (Opp. Br. at 18.)  This is dispositive because every alleged Form 10-Q misstatement in the Section 18 claim (Am. Compl. ¶¶ 234-47) is from Part I of ChinaCast's Forms 10-Q, which was (and is required to be) entitled "Financial Information."[10]  By contrast, Part II of Form 10-Q is entitled "Other Information."  The Opposition Brief does not cite any case permitting Section 18 claims based on statements in Part I of Form 10-Q.   Accordingly, the Section 18 claim based on statements on Form 10-Q must be dismissed.

---

9.   The Opposition Brief emphasizes that Ned Sherwood, who signed certain allegedly misleading statements as a ChinaCast insider, "is not a plaintiff" (Opp. Br. at 9), but fails to address whether any plaintiffs, including the two funds that are affiliated with Sherwood, relied on Sherwood in making their investments.  The Opposition Brief acknowledges that plaintiff Woodrum is ChinaCast's Chief Financial Officer, but similarly fails to address whether any plaintiff relied on Woodrum.  (*Id.* at 10.)

10.  *See, e.g.*, ChinaCast Education Corp. Form 10-Q for the Quarterly Period Ended September 30, 2010, available at http://www.sec.gov/Archives/edgar/data/1261888/000114420410058676/v201182_10q.htm.

### III.    THE AMENDED COMPLAINT FAILS TO PLEAD COMMON LAW FRAUD

The Opposition Brief fails to cite any applicable authority that supports its argument that the Amended Complaint pleads each necessary element of a common law fraud claim; namely, (i) making a statement; (ii) scienter; and (iii) reasonable reliance.  As discussed above, the Amended Complaint nowhere alleges, nor could it, that Deloitte U.S. made any statement at all concerning ChinaCast.[11]  (*See* Page 7, *supra*.)  Nor is there any allegation of fact to show fraudulent intent on the part of Deloitte U.S.  (*See* Pages 5-6, *supra*.)  Finally, the Amended Complaint fails to identify who specifically relied on the (unidentified) misstatement of Deloitte U.S., or how such reliance was reasonable.  *See Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 339 (2d Cir. 2011).

### IV.    LEAVE TO AMEND SHOULD BE DENIED

The request for leave to amend, made only in a footnote (Opp. Br. at 25, n.14), should be denied.  Plaintiffs have already amended their pleading once and they expressly declined the opportunity to do so again.  (Mov. Br. at 24.)  The request should be rejected for the additional reason that plaintiffs do not indicate "how further amendment would permit [them] to cure the deficiencies" in their pleading.  *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 140 (2d Cir. 2011); *see LaPierre ex. rel. Town of Yorktown v. DiBartolo*, No. 12 Civ. 1996, 2013 WL 656313, at *4-5 (S.D.N.Y. Feb. 21, 2013) (Ramos, J.) (denying leave to amend requested in footnote with no "indication as to how [plaintiffs] might cure the pleading deficiencies").  Indeed, leave to amend is particularly inappropriate here, where plaintiffs have already had as full access to ChinaCast's documents as a plaintiff could ever have, by virtue of the fact that

---

11.  In *Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 360-61 (S.D.N.Y. 2009) (Leisure, J.), Philip Morris allegedly caused misrepresentations in films by *paying for* the statements to be added to the films.  There is no such allegation here.  In *Allstate Insurance Co. v. Countrywide Financial Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011), the claim was sustained based on allegations that defendant made statements through limited purpose subsidiaries that it entirely controlled.  *Id.* at 1186.  Again, there is no such allegation here.

ChinaCast's own Chief Financial Officer is a named plaintiff.  If plaintiffs had any additional facts to plead, they would have already done so.

## Conclusion

For the foregoing reasons and those set forth in Deloitte U.S.'s opening brief, the claims against Deloitte U.S. should be dismissed with prejudice.

Dated:  New York, New York
        January 21, 2014

                                    Respectfully submitted,

                                    HUGHES HUBBARD & REED LLP

                                    By:   /s/William R. Maguire
                                         William R. Maguire
                                         Savvas A. Foukas
                                         Jesse James
                                    One Battery Park Plaza
                                    New York, New York 10004
                                    (212) 837-6000
                                    *Attorneys for Deloitte & Touche LLP*

10