UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                            )

SPECIAL SITUATIONS FUND III QP, L.P., *et al.*,  )  Civil Action No. 1:13-cv-01094 (ER)
                                            )
                    *Plaintiffs*,  )
v.                                         )
                                            )
DELOITTE TOUCHE TOHMATSU CPA, LTD., *et*  )
*al.*,                                           )
                    *Defendants*.  )
------------------------------------------------------------X


**DEFENDANT DELOITTE TOUCHE TOHMATSU CPA LTD.'s
REPLY IN SUPPORT OF ITS MOTION TO DISMISS
<u>THE FIRST AMENDED COMPLAINT</u>**


        Gary F. Bendinger
        SIDLEY AUSTIN LLP
        787 Seventh Avenue
        New York, New York  10019
        (212) 839-5300

        Michael D. Warden
        Elizabeth L. Howe
        SIDLEY AUSTIN LLP
        1501 K Street, N.W.
        Washington, DC  20005
        (202) 736-8000

        David A. Gordon
        SIDLEY AUSTIN LLP
        One South Dearborn Street
        Chicago, Illinois  60603
        (312) 853-7000

        *Attorneys for Deloitte Touche Tohmatsu CPA Ltd.*

Dated:  April 4, 2014

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .....................................................................................................................................2

I. THE COMPLAINT DOES NOT STATE A CLAIM UNDER SECTION 10(b). ..............2

    A. Plaintiffs Have Failed to Plead Scienter. ...............................................................2

        1. The Most Compelling Inference Is That DTTC Was Duped By Chan's Collusive Fraud. .................................................................................2

        2. Plaintiffs Have Not Shown That DTTC Ignored Any "Red Flags" Or That DTTC Performed "No Audit At All." .............................................6

    B. Plaintiffs Have Not Alleged Any Actionable Misrepresentation By DTTC. .........10

II. THE COMPLAINT DOES NOT STATE A CLAIM UNDER SECTION 18. ..................11

    A. The Complaint Does Not Plead With Particularity Any Actionable Misstatement Made Or Caused To Be Made By DTTC. .........................................11

    B. Plaintiffs Have Failed To Show Reliance. .............................................................13

III. PLAINTIFFS' STATE LAW CLAIM SHOULD BE DISMISSED. ................................15

IV. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. ..........................15

CONCLUSION ................................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)......................................................................................8

*Athale v. SinoTech Energy Ltd.*,
    2014 WL 687218 (S.D.N.Y. Feb. 21, 2014).............................................................................8

*Buttonwood Tree Value Partners, LP v. Sweeney*,
    910 F. Supp. 2d 1199 (C.D. Cal. 2012) ..................................................................................10

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011)...............................................................................................11, 13

*Freidus v. Barclay's Bank PLC*,
    734 F.3d 132 (2d Cir. 2013).....................................................................................................11

*Hanson v. Frazer, LLP*,
    2013 WL 5372749 (S.D.N.Y. Sept. 24, 2013)..........................................................................8

*In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011)...................................................................................4, 7

*In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*,
    __ F. Supp. 2d __, 2014 WL 463582 (S.D.N.Y. Feb. 4, 2014) ...................................11, 14, 15

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    2012 WL 6136746 (C.D. Cal. Dec. 7, 2012) ........................................................................4, 5

*In re Complete Mgmt. Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001)......................................................................................7

*In re First Merchants Acceptance Corp. Sec. Litig.*,
    1998 WL 781118 (N.D. Ill. Nov. 4, 1998) ..............................................................................4

*In re Lehman Bros. Sec. & ERISA Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011)...............................................................................11, 13

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    939 F. Supp. 2d 360 (S.D.N.Y. 2013) ("*Longtop II*") .............................................................7

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
    910 F. Supp. 2d 561 (S.D.N.Y. 2012) ("*Longtop I*")......................................................4, 10, 11

*In re Longwei*,
    2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ....................................................................................7

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003)..........................................................................................................15

*In re New Century*,
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) .........................................................................................4

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006).............................................................................................5, 14, 15

*Iowa Pub. Emps' Ret. Sys. v. Deloitte & Touche LLP*,
    919 F. Supp. 2d 321 (S.D.N.Y. 2013), *aff'd*,
    2014 WL 998311 (2d Cir. Mar. 17, 2014) ....................................................................................7

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
    131 S. Ct. 2296 (2011)..................................................................................................................12

*Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*,
    747 F. Supp. 2d 406 (S.D.N.Y. 2010)............................................................................................6

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).........................................................................................................10

*Reiger v. PricewaterhouseCoopers LLP*,
    117 F. Supp. 2d 1003 (S.D. Cal. 2000).........................................................................................5

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd*,
    485 F. App'x 461 (2d Cir. 2012) ..................................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................................................6

*Whalen v. Hibernia Foods PLC*,
    2005 WL 1799370 (S.D.N.Y. Aug. 1, 2005)................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ...............................................................................................................................11

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition does not come to grips with the arguments and authorities in DTTC's opening Memorandum, which demonstrated that this case is nothing more than an attempt to blame an auditor for a collusive management fraud concealed from the auditor and the company itself. Plaintiffs instead attempt to distort both their own allegations and the law.

First, Plaintiffs do not dispute that an auditor lacks the requisite scienter where a collusive fraud has been concealed from it. So they recast their own allegations. According to Plaintiffs' Opposition, the fraud perpetrated by Ron Chan, the Chief Executive Officer of ChinaCast Education Corporation, Inc. ("ChinaCast" or the "Company"), and his accomplices among ChinaCast's leadership was not thoroughly concealed for years—but was instead "obvious" and "hiding in plain sight." Such characterizations are wrong. The Complaint and the Company's SEC filings reveal that Mr. Chan for years successfully concealed the fraud from the Board of Directors, outside consultant FTI, and the Company itself; that he took affirmative steps to "frustrate" DTTC's audit even after the fraud was discovered; and that the Company could not access "bank record[s] and legal documentation" showing the fraud even after it knew about the fraud. These allegations and SEC filings establish that the most compelling inference is that DTTC did not have a state of mind approximating an intent to aid in Mr. Chan's fraud.

Second, Plaintiffs cannot overcome well-settled law that allegations of auditor *access* to information that would reveal fraud—as opposed to allegations of auditor *awareness* of red flags—does not establish scienter. So they recast the governing legal standard. Plaintiffs contend that they need not show awareness of red flags, but instead may establish scienter by alleging that a "reasonable" auditor would have discovered the fraud through a "properly-conducted audit." That is the standard for negligence—not recklessness—and does not support a claim under Section 10(b). The Complaint cannot establish scienter under the proper standard.

1

Plaintiffs also recast the governing legal standard for alleging that DTTC's audit opinion was false. Although they concede that they are required to show that the opinion was *subjectively* false, they incorrectly contend that subjective falsity is an easier standard to meet than the standard for scienter. In fact, the opposite is true. And Plaintiffs fail either standard.

Plaintiffs' Section 18 claim fares no better. Plaintiffs contend that DTTC is liable for *ChinaCast's* alleged misstatements on the theory that DTTC "controlled" ChinaCast. That contention relies on a fundamental misunderstanding of the auditor's role and is wrong as a matter of law. Plaintiffs also contend that DTTC can be held liable under Section 18 for issuing false audit opinions. But Plaintiffs have not adequately alleged that those opinions were subjectively false or that any plaintiff directly relied on them.

## ARGUMENT

**I.  THE COMPLAINT DOES NOT STATE A CLAIM UNDER SECTION 10(b).**

    **A.  Plaintiffs Have Failed to Plead Scienter.**

        **1.  The Most Compelling Inference Is That DTTC Was Duped By Chan's Collusive Fraud.**

Plaintiffs cannot dispute that where collusive management fraud has been concealed from an auditor, no inference of auditor scienter can be sustained. *See* DTTC Memo. 10-13 (citing, *inter alia*, AU ¶ 230.12 ("auditing procedures may be ineffective for detecting an intentional misstatement that is concealed through collusion"), AU ¶ 316.10 ("Collusion may cause the auditor who has properly performed the audit to conclude that evidence provided is persuasive when it is, in fact, false")). So Plaintiffs contend that DTTC *must* have acted recklessly in failing to detect the fraud because the fraud was not concealed—but instead "was simple, rampant, [and] easily discoverable," and "new management discovered the fraud almost immediately." Opp. 7, 12. These characterizations cannot be reconciled with the Complaint or the SEC filings.

First, the contention that the fraud was "easily discoverable" is inconsistent with Plaintiffs' express allegations that the fraud was *successfully concealed* from the Board of Directors and the Company itself from 2007 through 2012. DTTC Memo. 10 (citing FAC ¶¶ 177-79, 182 (transactions undertaken "without the knowledge or consent of the Company" or "the Board"). Indeed, as late as February 2012, Plaintiff (and then-ChinaCast director) Doug Woodrum signed ChinaCast's 2010 Form 10-K/A—which included the allegedly false 2010 financial statements, FAC ¶¶ 107, 110—apparently having failed to perceive what he and the other Plaintiffs now describe as misrepresentations that were "hiding in plain sight." Opp. 12.

After Mr. Chan was removed in March 2012, Mr. Woodrum (now serving as ChinaCast's CFO) and others still struggled—even with full access to ChinaCast's records—to grasp what Mr. Chan had done. In April 2012, ChinaCast's Board reported that it suspected Mr. Chan of engaging in "questionable activities and transactions," but publicly "reiterate[d] that [ChinaCast] is a strong company with great assets."[1] It was not until December 2012—nine months after new management had come on board—that ChinaCast reported that its 2009 and 2010 financial statements were not to be relied upon. FAC ¶ 182.[2] Even then, the Company declared that it had been unable to obtain full "bank record and legal documentation evidence," and had "not been able to determine the number and amount" of outstanding loans.[3] Although Plaintiffs now assert that new management "discovered the fraud almost immediately," and that "[s]imple reviews of ChinaCast's bank statements, documentation and trial balances by DTTC … would have revealed" the fraud to DTTC, Opp. 12, those assertions cannot be squared with the facts.[4]

---

[1] 4/2/2012 ChinaCast Form 8-K at Ex. 99.1.

[2] *See also* 12/21/2012 ChinaCast Form 8-K (attached as Ex. 1 to Supp. Bendinger Decl.).

[3] *Id.* at 1.

[4] The cases on which Plaintiffs rely (Opp. 6 & n.6) do not help them. The plaintiffs in each cited case alleged that fraud was discovered "almost immediately" or "in the course of one weekend" upon review of a company's

Plaintiffs' argument is also inconsistent with the fact that a forensic investigation of the Company's cash balances by independent consultant FTI in 2011 equally failed to uncover the fraud. *See* DTTC Memo. 6-7, 15-16. Plaintiffs attempt to downplay FTI's investigation, arguing that the Court may not "infer" that FTI did not uncover the fraud, and baldly asserting that FTI's report was "complex" and "ultimately raised several significant concerns about the cash balances that should have raised huge red flags for DTTC had it conducted a real audit." Opp. 16 n.14. But *after* FTI provided its 2011 report to the Board, Woodrum and others signed the allegedly misleading 2010 Form 10K-A in February 2012.[5] No impropriety was disclosed until April 2012, and the 2009 and 2010 financial reports were not declared unreliable until a full year after FTI's report. *See* FAC ¶ 182. Thus, however "complex" FTI's report may have been, it did not reveal the fraud unless Mr. Woodrum and others concealed that fraud for months thereafter.

In light of FTI's investigation and the scope of Mr. Chan's efforts to conceal the fraud, the California district court dismissed with prejudice claims against Ned Sherwood and other ChinaCast directors, and the Company itself, on the ground that Mr. Chan's successful concealment of the fraud defeated any inference of scienter. *See* DTTC Memo. 6-7, 11-12 (citing *In re ChinaCast Educ. Corp. Sec. Litig.*, 2012 WL 6136746 (C.D. Cal. Dec. 7, 2012)). Plaintiffs contend that the California court's decision has no bearing here because that court supposedly "made no finding whatsoever that the directors had been 'duped' by Chan." Opp. 14. But the California court held that "the misrepresentations and omissions relied on by Plaintiffs relate to an illegal scheme that Chan and his coconspirators *successfully concealed* from" the

---

financial statements. *In re First Merchants Acceptance Corp. Sec. Litig.*, 1998 WL 781118, at *6, *11 (N.D. Ill. Nov. 4, 1998); *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423, 517 (S.D.N.Y. 2011); *In re New Century*, 588 F. Supp. 2d 1206, 1231 (C.D. Cal. 2008). Here, the fraud was detected only after Mr. Chan was ousted from the Company, and then only upon review of outside evidence. Nor does the alleged size of the fraud establish scienter. *E.g.*, *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 578 (S.D.N.Y. 2012) ("*Longtop I*") ("a fraud's large size, standing alone, is insufficient to show recklessness").

[5] 2010 Form 10-K/A at 57.

directors. *In re ChinaCast,* 2012 WL 6136746, at *6 (emphasis added). The court further held that "the fact that ChinaCast sought and received independent verification of its cash position [from FTI] … negates any inference that the Individual Defendants or ChinaCast were deliberately reckless or acted with the requisite intent to defraud shareholders." *Id.* at *6 n.5.

Plaintiffs seek to minimize the California decision by asserting that it is not "at all unusual for a court to find that securities plaintiffs have adequately pled scienter-based claims against a company's auditor but not its outside directors." Opp. 15. But Plaintiffs can drum up only a single case to support this supposedly "not unusual" result.[6] Because of the auditor's "lack of rational economic incentive … to participate in fraud, the client's central role in providing information to the accountant, and the complex professional judgment required to perform an audit," it is "almost always more difficult to establish scienter on the part of the accountant than on the part of its client." *Reiger v. PricewaterhouseCoopers LLP*, 117 F. Supp. 2d 1003, 1007-08 (S.D. Cal. 2000); *see also* DTTC Memo. 12.

Ultimately, Plaintiffs argue that "DTTC cannot point to anything *in the Complaint* alleging that Chan took steps" to "prevent[] DTTC from conducting a proper audit." Opp. 13 (emphasis altered). It may be true that Plaintiffs carefully crafted their Complaint to omit allegations related to Chan's concealment efforts. But the Company's disclosures to the SEC reveal that Mr. Chan engaged in conduct that "may have led to the frustration of the audit of the Company's financial statements." *Id.* at 5-6 & n.9 (citing documents). Plaintiffs once again ask the Court to look the other way, arguing that the references to Mr. Chan's frustration of DTTC's audit "all relate to conduct that post-dates the last audit for which DTTC is sued." Opp. 13 n.12.

---

[6] The case Plaintiffs cite, *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006), is hardly "usual." That plaintiff offered 40 pages of allegations related to the auditor's scienter, including the red flag that payments from Suprema's supposed customers were drawn on the same bank accounts into which Suprema's payments to its supposed suppliers were deposited. *Id.* at 280-81. By contrast, the plaintiff offered only two pages of allegations related to the outside directors, and improperly alleged scienter as to them as a group. *Id.* at 281-82.

5

Mr. Chan's continued deceit even *after* he had been forced out of ChinaCast strongly supports an inference that Mr. Chan likewise—and successfully—concealed his fraud in the previous years.

Put differently, Plaintiffs ask this Court to believe that Mr. Chan successfully hid the fraud from ChinaCast's Board of Directors from 2007 through 2012, and worked to frustrate DTTC's 2011 audit of ChinaCast after his fraud was detected—yet did *not* conceal the fraud from DTTC during its 2007 through 2010 audits, and would willingly have handed over smoking-gun evidence had DTTC performed "basic audit procedures."[7]  Opp. 13.  "[F]or an inference of scienter to be strong, it must be more than merely plausible or reasonable—it must be 'cogent and at least as compelling as any opposing inference of nonfraudulent intent.'" *Meridian Horizon Fund, LP v. Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 412 (S.D.N.Y. 2010) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007)).  Here, the far more cogent inference is that DTTC—along with FTI, ChinaCast's directors, and the Company itself—was misled by Mr. Chan's successful concealment of the fraud.

### 2. Plaintiffs Have Not Shown That DTTC Ignored Any "Red Flags" Or That DTTC Performed "No Audit At All."

Plaintiffs' Opposition leaves no doubt that the crux of their Complaint is that DTTC "ha[d] ready access to" documents and records that "would have revealed" Mr. Chan's fraud. Opp. 2.[8]  Significantly, Plaintiffs cannot point to any allegation that DTTC either knew of the

---

[7] Of course, Plaintiffs cannot allege that DTTC in fact performed no "basic audit procedures."  Indeed, DTTC reported that ChinaCast had insufficient internal controls, DTTC Memo. 19-20—a conclusion DTTC could have reached only by performing audit procedures.  Plaintiffs surmise that DTTC *must* have acted recklessly because it failed to detect the fraud.  *See id.* at 13-15.  That theory fails: even reasonably performed "auditing procedures may be ineffective for detecting an intentional misstatement that is concealed through collusion."  AU ¶ 230.12.

[8] Plaintiffs purport to distinguish between documents in DTTC's possession and documents to which DTTC had access.  Opp. 1.  But the relevant point is not whether the documents were already in the room or simply accessible somewhere else, but rather whether DTTC was *aware* of evidence of fraud yet ignored it.  Auditors do not review every piece of paper relevant to a company's financial status, but instead conduct testwork, often by sampling. DTTC Memo. at 16-17.  Thus, asserting that DTTC "actually ha[d] possession of—not just access to" documents that supposedly contained evidence of fraud, Opp. 1, is insufficient to show that DTTC would have discovered that evidence in a perfectly conducted audit—much less that DTTC was reckless.  *See* DTTC Memo. at 16-17.

fraud, or that DTTC was aware of any purported red flags that would have prompted further inquiry, yet deliberately ignored them. Instead, Plaintiffs affirmatively point out that DTTC was *not* aware of the purported red flags. *See*, *e.g.*, Opp. 8-9 (arguing that DTTC did not "so much as notice" purported red flags). Plaintiffs' argument is defeated by the bedrock principle, reiterated in numerous cases, that "merely alleging that the auditor had *access* to the information by which it could have discovered the fraud is not sufficient." *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 378 (S.D.N.Y. 2013) ("*Longtop II*"). *See* DTTC Memo. 14 (citing cases).

Plaintiffs are thus forced to attempt to rewrite the standard. According to Plaintiffs, "[t]he red flags … need not actually have been seen by the auditor, so long as no reasonable auditor could have failed to recognize them during the course of a properly-conducted audit." Opp. 5.[9] Plaintiffs attempt to recast the scienter requirement to one of negligence—*i.e.*, scienter pled through allegations that a "reasonable auditor" would have recognized purported red flags during "a properly-conducted audit." *Id.* That is decidedly not the law.

As another judge in this district held, in a decision that was summarily affirmed by the Second Circuit just three weeks ago, "[i]n the context of red flags, courts have … noted that an auditor's access 'to the information by which it could have discovered the fraud is not sufficient' to establish recklessness. In other words, auditor *access* is not tantamount to auditor *awareness*." *Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 332 (S.D.N.Y. 2013), *aff'd*, 2014 WL 998311 (2d Cir. Mar. 17, 2014). This distinction separates recklessness from negligence: An auditor acts *negligently* if it fails to uncover evidence of fraud that it could

---

[9] The cases Plaintiffs rely on do not support their attempted rewriting of the standard. *See In re Longwei*, 2014 WL 285103, at *6 (S.D.N.Y. Jan. 27, 2014) (red flags existed in Longwei's financial statements, which it was "fair to assume that the auditors reviewed"); *Whalen v. Hibernia Foods PLC*, 2005 WL 1799370, at *3 (S.D.N.Y. Aug. 1, 2005) (auditor allegedly "knew about and ignored a wide variety of 'red flag' incidents or events"); *Bear Stearns*, 763 F. Supp. 2d at 512 (citing allegations of auditor's "awareness of red flags"); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 334 (S.D.N.Y. 2001) (auditor "was aware" of "a combination of 'red flags'").

7

have detected through review of accessible records and that a properly conducted audit would have detected. But an auditor acts *recklessly* if it is aware of "red flags" that should prompt further inquiry, but ignores them. *See*, *e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 451 (S.D.N.Y. 2010) (plaintiffs "fail[ed] to allege that the [auditors] were sufficiently aware of the red flags cited in the" complaint); *Hanson v. Frazer, LLP*, 2013 WL 5372749 (S.D.N.Y. Sept. 24, 2013), at *5 ("facts suggesting wrongdoing by an audited company are 'red flags' only if the information is something of which the auditor was aware"). Indeed, another judge in this District recently rejected the precise argument that plaintiffs make here—namely, that scienter is adequately pled by a "conclusory assertion that 'the red flags would be clearly evident to any auditor performing its duties.'" *Athale v. SinoTech Energy Ltd.*, 2014 WL 687218, at *7-8 (S.D.N.Y. Feb. 21, 2014) (dismissing 10(b) claim against Ernst & Young China). "The fact that 'a person has broad access to every book in a library does not mean that the person has read and chosen to ignore facts contained in a particular book in the library.'" *Id.* (citation omitted).

Nothing in Plaintiffs' Complaint or Opposition establishes scienter under the actual standard. Plaintiffs rehash the allegations of their Complaint in lengthy block quotes, Opp. 9-11, but never refute DTTC's showing that those allegations do not establish scienter. Instead, they focus on what DTTC "failed to so much as notice" rather than on what DTTC actually saw. *Id.* at 8-9. For example, Plaintiffs restate their contention that DTTC could have discovered the fraud by review of trial balances that supposedly would have revealed that Company subsidiaries engaged in transactions that were unrelated to the Company's business. *Id.* at 11. They contend that a "reasonable" auditor would have "verif[ied] that these highly unusual outflow transactions were legitimate," *id.* n.10—but they fail to respond to DTTC's arguments that the allegations do not establish *recklessness*. *See* DTTC Memo. 16-18. Indeed, they simply ignore the point that

8

even a "reasonable" auditor might not have been aware of these transactions as a result of the entirely "reasonable" auditor practice of sampling. *Id.* at 16-17.

The same is true of Plaintiffs' argument related to allegations that undisclosed loans were used to acquire brick-and-mortar universities. Opp. 11. Plaintiffs simply restate their allegation that DTTC could have detected these loans "through the simple act of reviewing bank records," *id.*, but offer no response to DTTC's argument—that not even *the Company itself* detected this supposed misstatement for months *after* the fraud was uncovered. DTTC Memo. 14-15.

Plaintiffs also argue that DTTC violated GAAS standards by supposedly "fail[ing]" to review particular materials. Opp. 9-11. Yet the Complaint does not, and could not, allege that DTTC *did not review* ChinaCast's account statements, bank records, or trial balances[10]—or even that DTTC failed to review any materials that it had a duty to review. Indeed, the Complaint is silent on what steps DTTC actually did or did not take in conducting its audit. *See* DTTC Memo. 16 & n.16. The Complaint instead simply alleges that such records would supposedly have revealed the fraud, and theorizes as a matter of hindsight that DTTC must therefore have acted recklessly in failing to detect the fraud. *See* DTTC Memo. 13-14 & n.14. Such hindsight-based reasoning is reproduced throughout Plaintiffs' Opposition.

Thus, for example, Plaintiffs argue that DTTC would have discovered encumbrances on ChinaCast's term deposits if it had "attempted to confirm with the financial institutions that held them that the term deposits were unencumbered." Opp. 9. Therefore, "DTTC's failure to confirm the existence and unencumbered nature of these assets with ChinaCast's banks violated" GAAS standards, such as the standard requiring that an auditor "obtain sufficient 'competent

---

[10] Plaintiffs also allege that DTTC would have detected the fraud by "reviewing records readily obtainable from the Hong Kong Companies Registry." Opp. 9. Evidence of fraud that was available to the public does not constitute "red flags," and does not support an inference of scienter. *See Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010) ("inference of scienter based on publicly available red flags is simply not as cogent and compelling as the opposing inference of nonfraudulent intent"), *aff'd*, 485 F. App'x 461 (2d Cir. 2012); DTTC Memo. 18-19.

evidential matter' to support its opinion.'" *Id.* (quoting AU § 150.02). This is the very definition of hindsight: Because DTTC supposedly *could have* discovered evidence of fraud by reviewing particular records, its failure to detect the fraud means it *must have* recklessly violated a duty to review "sufficient 'competent evidential matter.'" Hindsight does not establish scienter. *See, e.g.*, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). Plaintiffs' arguments are particularly worthless here, where the Company was the subject of a collusive fraud, and *the Company itself* was unable to obtain evidence of fraudulent transactions. DTTC Memo. 14-15; FAC ¶ 182.

In the end, Plaintiffs cannot dispute that DTTC *did* identify problems with ChinaCast's financial statements and *did* publicly report that ChinaCast had deficient internal controls over financial reporting; that cannot be squared with the contention that DTTC performed "no audit at all." Opp. 24-25; *see also* DTTC Memo. 19-20; *Buttonwood Tree Value Partners, LP v. Sweeney*, 910 F. Supp. 2d 1199, 1207 (C.D. Cal. 2012) ("Plaintiffs' allegation that Deloitte unquestioningly acquiesced to [the company's] alleged wrongdoing is … undermined by the fact that Deloitte identified a material weakness in [the company's] internal controls."). Plaintiffs offer no basis for ignoring the work that DTTC performed, but simply contend that DTTC should have done more. Opp. 25. The recklessness standard is not a metric for judging audit quality. It is not enough to allege, as Plaintiffs do, that DTTC performed an unsatisfactory audit instead of a better one, or that DTTC did only "something" but should have done more. *See id.* at 17. "At its core the Complaint alleges that, had DTTC performed a better audit, it would have uncovered [Mr. Chan's] fraud. At most this describes negligence by DTTC, not the recklessness approaching actual intent required by the PSLRA." *Longtop I*, 910 F. Supp. 2d at 575.

**B.     Plaintiffs Have Not Alleged Any Actionable Misrepresentation By DTTC.**

DTTC demonstrated in its opening Memorandum that the Complaint fails to allege that DTTC's audit opinion was subjectively false. DTTC Memo. 21-24. Plaintiffs do not dispute

10

that they were required under the case law to make that showing. *See* Opp. 18-19 & n.17. Instead, they argue that they have done so because they supposedly have established scienter, and "the subjective falsity requirement is less demanding than scienter." Opp. 19. As shown in Part I.A., the first half of Plaintiffs' argument is wrong. The second is wrong, as well.

An opinion is an "inherently subjective" matter of judgment "as to which reasonable professionals planning or conducting an audit reasonably and frequently could disagree." *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 300-01 (S.D.N.Y. 2011). For that reason, to plead that an audit opinion is false, a plaintiff must "allege facts that, if true, would permit a conclusion that [the auditor] either [1] did not in fact hold that opinion or [2] *knew* that it had no reasonable basis for it." *Longtop I*, 910 F. Supp. 2d at 580 (emphasis added). Thus, the auditor must have *actual knowledge*—either that its audit opinion is false or that it is baseless. This showing is thus, if anything, more demanding than the recklessness standard for scienter.[11]

## II.  THE COMPLAINT DOES NOT STATE A CLAIM UNDER SECTION 18.

### A.  The Complaint Does Not Plead With Particularity Any Actionable Misstatement Made Or Caused To Be Made By DTTC.

Plaintiffs contend that they have adequately pled that "DTTC is liable under Section 18 for two sets of false and misleading statements": statements in ChinaCast's financial statements and statements in DTTC's audit opinion. Opp. 22-23. Plaintiffs are wrong on both counts.[12]

First, Plaintiffs' theory that DTTC can be held liable for *ChinaCast's* alleged misstatements, on the ground that DTTC somehow "controlled" those statements, makes no

---

[11] The Second Circuit did not hold differently in either *Freidus v. Barclay's Bank PLC*, 734 F.3d 132 (2d Cir. 2013), or *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011). *See* Opp. 18-19. In those cases, the court held that the subjective falsity requirement was not "one and the same" as scienter because the two are distinct inquiries: *i.e.*, for causes of action that have no scienter element, subjective falsity still must be shown if the alleged misrepresentation is a matter of opinion. *Freidus*, 734 F.3d at 141; *Fait*, 655 F.3d at 112 n.5.

[12] Contrary to Plaintiffs (Opp. 21-22), Rule 9(b)'s pleading requirements apply to Section 18 claims, even where the plaintiff purports to disclaim any fraud allegations. *In re Bear Stearns Cos., Inc. Sec., Deriv. & ERISA Litig.*, __ F. Supp. 2d __, 2014 WL 463582, at *14 (S.D.N.Y. Feb. 4, 2014).

sense—and it is thus unsurprising that Plaintiffs cannot cite a single authority that supports it. *See* Opp. 24-26. An independent auditor controls one statement: its audit opinion. The auditor chooses to issue an unqualified audit opinion or not, and the company chooses how to proceed. *See* DTTC Memo. 25-27 (citing cases). Plaintiffs in fact *concede* this to be true, recognizing that even where an auditor "insist[s]" on a particular disclosure, the audited company still "ha[s] two choices. Either it could make the appropriate disclosure … and obtain a clean audit opinion" or "it could refuse." Opp. 24-25. That the choice of what to say *always* rests with the audited company defeats any notion that the auditor controls the company's statements. *See Janus Capital Grp., Inc. v. First Deriv. Traders*, 131 S. Ct. 2296, 2302 (2011).

Second, Plaintiffs have not stated a claim under Section 18 for any misstatement in DTTC's audit opinion. The Complaint is quite explicit in listing particular alleged misstatements in connection with the Section 18 cause of action, and none of those statements is a DTTC audit opinion. FAC ¶¶ 240-41. Plaintiffs now contend that other paragraphs of the Complaint—including paragraphs that do challenge DTTC audit opinions—"are incorporated by reference into the Section 18 claim." Opp. 23. But that assertion is wrong. For every other cause of action, Plaintiffs expressly "repeat[ed] and reallege[d] each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein." FAC ¶¶ 205, 217, 222, 248. There is *no* such express incorporation in connection with Plaintiffs' Section 18 cause of action.[13]

More importantly, even accepting Plaintiffs' characterization of the Complaint, their Section 18 claim necessarily fails. For one thing, they have not shown that DTTC's audit opinions are subjectively false. *See* p. 10, *supra*; DTTC Memo. 27. Plaintiffs suggest that the requirement to show subjective falsity of opinions does not apply to Section 18 claims because

---

[13] Plaintiffs also suggest that this is a mere "scrivener's error that can easily be corrected through a simple amendment." Opp. 24 n.21. But this "error" was an important one, and DTTC raised this precise issue in its pre-motion letter to the Court, Bendinger Ltr. (Nov. 19, 2013), p.3 (attached as Ex. 2 to Supp. Bendinger Decl.).

12

of the availability under Section 18 of a good faith defense.  Opp. 27 n.24.  But the subjective falsity requirement turns on the nature of *opinions*: An opinion is not "false" merely because a plaintiff "quarrel[s]" with it, but only if it is subjectively false.  *Lehman Bros.*, 799 F. Supp. 2d at 300-01.  That is why plaintiffs must plead subjective falsity of opinions separate and apart from scienter.  *See Fait*, 655 F.3d at 112 n.5.  And the same principle makes the subjective falsity requirement apply under Section 18, notwithstanding the availability of a good faith defense.

### B. Plaintiffs Have Failed To Show Reliance.

Plaintiffs also fail to plead reliance as required under Section 18.  *See* DTTC Memo. 28-29.  Their failure is particularly stark for DTTC's audit opinions: Even accepting Plaintiffs' characterization of the Section 18 cause of action as incorporating allegations of the falsity of DTTC's audit opinions, Plaintiffs have alleged *no facts* to show reliance on those audit opinions.

Reliance in a Section 18 claim is substantially different from—and substantially more difficult to plead than—the reliance in a Section 10(b) claim.  *Id.* at 21.  Thus, Plaintiffs purported to include *different*, Section 18-specific allegations of supposed "direct eyeball reliance," by only *certain* Plaintiffs during a *certain* span of time, on the specific statements identified in the Section 18 claim.  *See* FAC ¶¶ 240 ("[I]n making purchases of Company stock between March 30, 2010, and March 16, 2011, the Section 18 Plaintiffs actually read, and had direct eyeball reliance on, the following statements..."); FAC ¶ 241 (similar).  Those statements did not include DTTC's audit opinion, DTTC Memo. 25, a fact Plaintiffs do not address.

Moreover, no allegations of "direct eyeball reliance" by any specific plaintiff on any specified date are included as to any DTTC audit opinion anywhere in the Complaint.  The paragraphs in other portions of the Complaint to which Plaintiffs point, Opp. 23, allege no *facts* at all, but merely state in the most conclusory terms that "Plaintiffs specifically read, reviewed, and relied on [the audit opinions] in purchasing ChinaCast securities."  FAC ¶ 208; *accord* FAC

13

¶¶ 57, 70. This purported reliance is not connected to any individual plaintiff or group of plaintiffs, limited to any particular point in time, or tied to any particular purchase of securities.

Such generic allegations are insufficient to "plead reliance with the specificity required." *Bear Stearns*, 2014 WL 463582, at *14. Allegations that a plaintiff "'read' and 'relied' on the alleged misrepresentations … 'in deciding whether it should purchase'" securities, without "link[ing] its review of any particular statements … to any actual purchases," or "identify[ing] a particular transaction that it allegedly made in reliance on" the statements, "is not sufficiently particularized" to state a claim under Section 18. *Id.* at *15; *see also* DTTC Memo. 28-29 (citing additional case law). Plaintiffs characterize *Suprema*, 438 F.3d 256, as requiring only that "Section 18 plaintiffs … specify which misrepresentations they actually read and relied upon in deciding to purchase the securities." Opp. 28-30 & n.26. But the Third Circuit affirmed dismissal of a Section 18 claim that used allegations nearly identical to Plaintiffs' here. *See* 438 F.3d at 284 ("Plaintiffs alleged cursorily that they 'received, reviewed, actually read, and relied upon' various [filings]."). Just like the unsuccessful plaintiffs in *Suprema*, Plaintiffs here failed to allege "facts probative of their actual reliance on any specific false statements"—*i.e.*, facts "to show the requisite causal nexus between their purchase of securities and specific statements." *Id*.

The Court need not even reach the question of whether Plaintiffs adequately pled reliance on the alleged misrepresentations in ChinaCast's financial statements, FAC ¶¶ 270-71, because none of those statements was made or caused to be made by DTTC. *See* p. 10-11, *supra*. But, in any event, Plaintiffs also have failed to allege sufficient facts to establish reliance on those statements. *See* DTTC Memo. 28-29. Although Plaintiffs do identify specific alleged misrepresentations and do allege yearlong periods of time in which their reliance supposedly occurred, they allege *no facts* establishing any causal nexus between any individual plaintiff's

14

review of the misstatements and any subsequent purchase of securities.  *Id.*  Thus, Plaintiffs have failed to show reliance under *Bear Stearns*, *Suprema*, or any other case.  *See* Opp. 28.

### III. PLAINTIFFS' STATE LAW CLAIM SHOULD BE DISMISSED.

Plaintiffs' Opposition offers no basis for sustaining their state law claim or for maintaining subject matter or personal jurisdiction in this Court if the federal claims are dismissed.  *See* DTTC Memo. 29-30; Opp. 30.  Plaintiffs contend that *DTTC* has not "articulate[d]" why it is not subject to personal jurisdiction in New York, *id.* at 30 n.28, but it is *Plaintiffs'* burden to establish personal jurisdiction—not DTTC's burden to disprove it.  *E.g.*, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

### IV. THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Plaintiffs seek leave to amend their Complaint to allege purportedly new facts, Opp. 2 n.2., 10 n.8, yet they chose not to amend the Complaint despite this Court's instruction that the purpose of the Court's pre-motion conference process is to give Plaintiffs an opportunity to amend after "having heard the concerns of the other side," Dkt. 16, Ex. 2 at 19:21-20:1 (attached as Ex. 3 to Supp. Bending Decl.).  Moreover, no amount of additional materials that DTTC supposedly would have, could have, or should have reviewed will change the fact that Mr. Chan and his accomplices perpetrated a collusive fraud that was successfully concealed for years.

### CONCLUSION

For the foregoing reasons, and the reasons set forth in DTTC's opening Memorandum, the Complaint should be dismissed with prejudice.

Dated: April 4, 2014                                Respectfully submitted,

                                                  /s/ *Gary F. Bendinger*
                                                  SIDLEY AUSTIN LLP
                                                  *Attorneys for Defendant Deloitte Touche Tohmatsu CPA Ltd.*