UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

SPECIAL SITUATIONS FUND III QP, L.P.;   :
SPECIAL SITUATIONS CAYMAN FUND, L.P.;   :
COLUMBIA PACIFIC OPPORTUNITY FUND,   :
L.P.; FIR TREE VALUE MASTER FUND, L.P.;   :
FIR TREE CAPITAL OPPORTUNITY MASTER   :    No. 1:13-cv-01094 (ER)
FUND, L.P.; LAKE UNION CAPITAL FUND   :
L.P.; LAKE UNION CAPITAL TE FUND L.P.;   :
ASHFORD CAPITAL MANAGEMENT, INC.; ZS   :
EDU L.P.; MRMP MANAGERS LLC; WHI   :
GROWTH FUND QP, LP; DOUGLAS N.   :
WOODRUM; ROBERT A. HORNE; HOWARD S.   :
BERL; BRIGHTLIGHT CAPITAL PARTNERS   :    <u>Oral Argument Requested</u>
LP; and TORTUS CAPITAL MASTER FUND, LP,   :
  :
       Plaintiffs,   :
  :
       v.   :
  :
DELOITTE TOUCHE TOHMATSU CPA, LTD.;   :
DELOITTE & TOUCHE LLP; ANTONIO SENA;   :
JUSTIN TANG; YIN JIANPING; RICHARD XUE;   :
MICHAEL SANTOS, JOHN AND JANE DOES 1-   :
10; and ABC CORPS. 1-10,   :
  :
       Defendants.   :

----------------------------------------------------------------x


**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AGAINST
<u>DEFENDANT DELOITTE & TOUCHE LLP</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..................................................................................................................2

    I.      PLAINTIFFS DO NOT ENGAGE IN IMPERMISSIBLE GROUP PLEADING.......................................................................................................2

    II.     THE SAC STATES A CLAIM UNDER SECTION 20(A) ...................................3

          a.      The SAC Sufficiently Pleads Deloitte US's control over DTTC and the ChinaCast Audit ...............................................................................3

          b.      The SAC Sufficiently Pleads Culpable Participation ..................................7

    III.    THE SECOND AMENDED COMPLAINT STATES A VALID SECTION 18 CLAIM AGAINST DELOITTE US....................................................9

          a.      The SAC Pleads Facts Showing that Deloitte US Caused DTTC to Make a False or Misleading Statement .......................................................9

          b.      The SAC Pleads Subjective Falsity and Reliance....................................10

    IV.    THE SECOND AMENDED COMPLAINT STATES A CLAIM FOR COMMON LAW FRAUD ...................................................................................10

CONCLUSION..............................................................................................................10

# TABLE OF AUTHORITIES

**PAGES**

CASES

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
   No. 03 MD 1529 (LMM), 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007 ................................9

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)........................................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................6

*Cornwell v. Credit Suisse Grp.*,
   689 F. Supp. 2d 629 (S.D.N.Y. 2010)........................................................................3

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2009)........................................................................................6

*Dietrich v. Bauer*,
   126 F. Supp. 2d 759 (S.D.N.Y. 2001)........................................................................4

*Fait v. Regions Fin. Corp.*,
   655 F.3d 105 (2d Cir. 2011)......................................................................................10

*Lieberman v. City of Rochester*,
   07-CV-6316L, 2011 BL 114991 (W.D.N.Y. Apr. 29, 2011) ..............................5, 6

*Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*,
   No. 03 Civ. 0613 GBD, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) ......................7

*In re Quintel Entm't Inc. Sec. Litig.*,
   72 F. Supp. 2d 283 (S.D.N.Y. 1999)..........................................................................4

*In re Refco, Inc. Secs. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................................3, 10

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996)......................................................................................4

*Star Energy Corp. v. RSM Top-Audit*,
   No. 08 Civ. 00329 (DC), 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008) .................7

*Stevelman v. Alias Research Inc.*,
   174 F.3d 79 (2d Cir. 1999)..........................................................................................5

*STMicroelectronics v. Credit Suisse Grp.*,
   775 F. Supp. 2d 525 (E.D.N.Y. 2011) ...................................................................3, 4

*Tuosto v. Philip Morris USA Inc.*,
    672 F. Supp. 2d 350 (S.D.N.Y. 2009).........................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    672 F. Supp. 2d 596 (S.D.N.Y. 2009)..........................................................................3

*In re Worldcom, Inc. Secs. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003)..........................................................................3

**RULES**

Federal Rule of Civil Procedure 8 ...........................................................................3, 5, 6

Federal Rule of Civil Procedure 9 ..................................................................................5

**REGULATIONS**

17 C.F.R. § 240.12b-2.....................................................................................................4

Plaintiffs respectfully submit this memorandum of law in reply to Deloitte & Touche LLP's ("Deloitte US") opposition to Plaintiffs' motion for leave to file a Second Amended Complaint (the "SAC").[1]

## PRELIMINARY STATEMENT

Deloitte US controlled DTTC's audits of ChinaCast.  As alleged in both the FAC and the SAC, Deloitte US, as the expert on US GAAP, possessed a veto right over the contents of DTTC's audit opinions.  DTTC simply would not, as a matter of fact, sign ChinaCast audit opinions without Deloitte US's approval and sign-off.  Deloitte US thus had far more than "minimal" involvement in the audit.

The SAC pleads additional facts that, in the aggregate, plausibly demonstrate that Deloitte US was integrally involved in the ChinaCast audit engagement starting in 2007 and, along with DTTC, determined whether the fraudulent consolidation of CCT HK in ChinaCast's financial statements was appropriate.  Recovered communications show that "Deloitte's US national office" was referred to as "the auditor" of ChinaCast; Deloitte US was the "author" of numerous ChinaCast audit committee presentations; and the Company had a specific line item for payments to Deloitte US.  Indeed, because Deric Chiu, DTTC's lead engagement partner, was not a US certified accountant and lacked the GAAP expertise possessed by Deloitte US, Deloitte US's control over the audit was essential.  And when things went bad, and ChinaCast's new management was trying to get a handle on the extent of the fraud and recover the Company's records, it was John Mackay of Deloitte US who not only informed new

---

[1]  Capitalized terms used herein have the same meaning as used in the SAC, unless otherwise indicated. The Court's July 21, 2014, Order dismissing the First Amended Complaint and Jury Demand ("FAC") without prejudice is referred to as the "Order" and cited as "Op."  Defendant Deloitte & Touche LLP's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint is referred to as "Deloitte US's Opposition" and cited as "Deloitte US Opp."

management that the Deloitte entities would refuse further cooperation, but also admitted that the CCT HK consolidation should never have happened.  These allegations are sufficient to establish the "control" element of Plaintiffs' Section 20(a) claim against Deloitte US, as well as the "caused to be made" element of its Section 18 claim.

The SAC also pleads facts demonstrating that (at the very least) Deloitte US acted with scienter in connection with the consolidation issue, as a result of which a clean audit opinion was given to financial statements representing that ChinaCast owned 98.50% of CCT HK, when in fact it owned less than 50%.  Deloitte US (and, for that matter, DTTC) knew the truth – which is that Chan owned 50% of CCT HK personally – because ChinaCast disclosed that fact to them, as DTTC later admitted.  Deloitte US directly involved itself in the review of the consolidation issue, reviewed the same materials DTTC had and knowingly (or, at least, recklessly) acquiesced in the Company's fraud.  Thus, Plaintiffs have sufficiently alleged "culpable participation" under Section 20(a) and "subjective falsity" under Section 18.  Plaintiffs have also cured the deficiencies the Court previously identified in their Section 18 reliance allegations.

Based on the entirety of the facts pled in the SAC and the reasonable inferences to which Plaintiffs are entitled, the SAC states claims under Section 20(a), Section 18 and common law fraud against Deloitte US.  The Court should grant Plaintiffs' motion to amend.

## ARGUMENT

## I.     PLAINTIFFS DO NOT ENGAGE IN IMPERMISSIBLE GROUP PLEADING

As it did in its motion to dismiss the FAC, Deloitte US again argues that Plaintiffs have engaged in impermissible group pleading.  (*See* Deloitte US Opp. at 3-4.)  Of course, Deloitte US already lost that argument.  Explicitly rejecting the charge of impermissible group pleading, the Court explicitly ruled that the FAC "makes sufficiently clear that Plaintiffs' object

is to hold Deloitte US liable principally on a theory of vicarious liability for the actions of DTTC" and "apprise[s] each Deloitte entity of the nature of their participation in the alleged fraud."   (Op. at 22-23.)   The SAC reiterates the allegations this Court has already deemed sufficient to apprise each defendant of the factual basis for its respective wrongdoing, and contains numerous *additional* allegations specifically targeted at Deloitte US.   There is no group pleading problem.

## II.       THE SAC STATES A CLAIM UNDER SECTION 20(A)

A claim for control person liability under Section 20(a) requires a plaintiff to plead (1) that the controlled person committed a primary violation of the Exchange Act, and (2) direct or indirect control of the primary violator by the defendant.   *See, e.g.*, *In re Worldcom, Inc. Secs. Litig.*, 294 F. Supp. 2d 392, 414 (S.D.N.Y. 2003).   The Court has previously found in this case that culpable participation is also required.   (Op. at 45, 47.)   The SAC pleads all the elements required by this Court.[2]

### a.       The SAC Sufficiently Pleads Deloitte US's control over DTTC and the ChinaCast Audit

Unlike fraud elements, the "control" element of a Section 20(a) claim need only be pled in accordance with Rule 8(a)'s notice pleading standard.   *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 610 (S.D.N.Y. 2009); *In re Refco, Inc. Secs. Litig.*, 503 F. Supp. 2d 611, 660 (S.D.N.Y. 2007); *STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 535-36 (E.D.N.Y. 2011) (quoting *Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629, 639 (S.D.N.Y. 2010)) ("To allege control, as with any other element, a 'plaintiff[] must plead only sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'").   Control means "the power to direct or cause the direction of the management and

---

[2]   For the reasons set forth in Plaintiffs' moving brief and their reply to DTTC's opposition, the SAC adequately alleges that DTTC committed a primary violation of the Exchange Act.

policies . . . whether through the ownership of voting securities, by contract, **or otherwise**." *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996) (quoting 17 C.F.R. § 240.12b-2) (emphasis added). "For purposes of Section 20(a) liability, actual control requires only the ability to direct the actions of the controlled person, and not the active exercise thereof." *STMicroelectronics*, 775 F. Supp. at 536 (quoting *Dietrich v. Bauer*, 126 F. Supp. 2d 759, 765 (S.D.N.Y. 2001) (internal quotation marks omitted). Indeed, control "has been construed as requiring only some indirect means of discipline or influence short of actual direction by the controlling person." *Dietrich*, 126 F. Supp. 2d at 765 (internal quotation marks omitted).

Plaintiffs have alleged sufficient facts to state a plausible claim that Deloitte US controlled DTTC and its audits. The two Deloitte entities had an arrangement between themselves and ChinaCast whereby Deloitte US had the final say on DTTC's audit opinions and the content of ChinaCast's SEC filings. Deloitte US issued specific directions on these documents which DTTC had to follow (the pre-paid expense write-off issue in connection with the 2010 financial statements being only one specific example). And DTTC could not sign off on ChinaCast's financial statements without the approval of Deloitte US. If that does not constitute "control," it is hard to see what would. (*See, e.g.,* SAC ¶¶ 85, 106-116.) *In re Quintel Entm't Inc. Sec. Litig.*, 72 F. Supp. 2d 283, 298 (S.D.N.Y. 1999) (finding the requisite degree of control where "[p]laintiffs allege that the individual defendants influenced and controlled the decision-making of Quintel, 'including the content and dissemination of various statements which plaintiff contends are false and misleading.'"); *STMicroelectronics*, 775 F. Supp. at 536; *Dietrich*, 126 F. Supp. 2d at 765. Moreover, Deloitte US was directly involved in several critical issues concerning the ChinaCast audit, including consolidation of CCT HK, as to which it had the final word. (*See, e.g.*, SAC ¶¶ 109, 123, 125, 127.) Plaintiffs' allegations demonstrate that

Deloitte US controlled DTTC both as a general matter **and** in connection with the ChinaCast engagement specifically.

In addition, the SAC pleads numerous facts that corroborate Deloitte US's direct involvement in the ChinaCast audits.  Deloitte US was directly involved in making audit committee presentations, was being paid directly by the Company, and had personnel associated with it communicating with the Company's representatives directly.[3]  (*See, e.g.*, SAC ¶¶ 106-110, 116.)  Indeed, the metadata from multiple audit committee presentations shows Deloitte US as the author – a remarkable fact if Deloitte US merely had a "very limited" role at ChinaCast, as it claims.  (*See* SAC at ¶¶ 85, 106, 108; Deloitte US Opp. at 12.)  Deloitte US responds to this by simply proffering its own interpretation of the facts pled – claiming that this was a generic template used by DTTC.  (Deloitte US Opp. at 6.)  But Plaintiffs' allegations are presumed to be true on this motion, and Deloitte US cannot neutralize this particular allegation by simply denying it.[4]  Under either Rule 8 or Rule 9(b), the Court is "obliged" to "accept as true the facts alleged by the plaintiff," and to **accord the plaintiff** the benefit of all favorable reasonable inferences from the facts they have alleged.  *Lieberman v. City of Rochester*, 07-CV-6316L, 2011 BL 114991, at *7 (W.D.N.Y. Apr. 29, 2011) (citing *Stevelman v. Alias Research Inc.*, 174

---

[3]  Deloitte US claims that the identification of Eric Phipps, a partner in the ChinaCast engagement, on a third-party website as associated with "Deloitte & Touche LLP" is "irrelevant and misleading" because this name can refer to numerous other Deloitte entities.  (Deloitte US Opp. at 6 n. 3.)  But the allegation is certainly relevant, as is John McKay's association with Deloitte US, as to who was practically representing Deloitte – whether DTTC, Deloitte US, or otherwise, with the Company.  At this stage, Plaintiffs – not Deloitte US – receive the benefit of favorable inferences about who Phipps worked for.

[4]  Likewise as to the line item for payment to Deloitte US by the Company pled in the SAC. *See* SAC at ¶ 112.  Deloitte US's response is to simply assert that "there is no reason to presume from the face of it that it references an invoice from 'Deloitte US'" (Deloitte US Opp. at 5) – except that the SAC explicitly pleads why there is such a reason.  This line item appears under a category "US$ payables", and as within a list of "Deloitte – HK"; "Deloitte – BJ" and "Deloitte US".  (SAC ¶ 112.)  Deloitte US's preferred explanation – that this somehow references a US dollar payable invoice to someone other than Deloitte US falls flat.  The most obvious reading is exactly what the entry says: multiple "US$ payables" were outstanding to multiple Deloitte entities, including "Deloitte – BJ" (DTTC) and "Deloitte US" (Deloitte US).

F.3d 79, 83 (2d Cir. 1999)); *see also In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009).

Moreover, Deloitte US's simply labeling the SAC's allegations "conclusory" does not make them so.  (*See* Deloitte US Opp. At 16.)  Indeed, the SAC explains quite clearly "how, when, [and] in what manner" Deloitte US exercised this control – by holding the power to veto DTTC's audit opinions on all ChinaCast SEC filings; issuing binding directions on ChinaCast financial statements that had to be addressed; *etc.*  This is more than sufficient to satisfy Plaintiffs' obligation under Rule 8 to plead enough facts to make the claim "plausible," to "raise a right to relief above the speculative level," and "to raise a reasonable expectation that discovery will reveal evidence" of the claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007).  Complaints "need not plead specific evidence" and need "only plead facts that make [the] claims plausible."  *Lieberman*, 2011 BL 114991, at *7 (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010)).  This is all the more true when the facts concerning the precise relationship between Deloitte US and DTTC in connection with the ChinaCast engagement are peculiarly within defendants' knowledge.

Furthermore, Deloitte US's claim that Plaintiffs' allegations amount to nothing more than "the provision of expertise, advice, or review" is frivolous.  (Deloitte US Opp. at 17.) Just to take one example (among many), how Deloitte US could possibly construe the allegations in paragraph 85 of the SAC that "Deloitte US controlled the audit of ChinaCast by DTTC and had final authority over all U.S. GAAP matters," and that "***DTTC would not sign the Company's filings with the SEC until Deloitte US had reviewed and approved those filings***," as contending that Deloitte US merely gave DTTC "advice" strains credulity well past the breaking

point.  Deloitte US had the final word on DTTC's audits and ChinaCast's SEC filings, which renders it liable as a control person.[5]

### b.    The SAC Sufficiently Pleads Culpable Participation

In analyzing culpable participation, this Court held that Plaintiffs must plead facts giving rise to a strong inference that Deloitte US acted recklessly in connection with the DTTC audits of ChinaCast that it controlled.  (Op. at 47-48.)  The SAC fulfills this requirement.

Most significantly, Deloitte US was directly involved in signing off on the consolidation of a subsidiary – CCT HK – in which ChinaCast claimed to own a majority interest, but did not.  In fact, Chan owned 50% of CCT HK personally, and the Company owned only a minority interest.  Moreover, because the Company owned only a minority interest, CCT HK should not have been consolidated in ChinaCast's financial statements, as subsequently admitted by Deloitte's John MacKay.  (SAC ¶ 126.)  DTTC knew about Chan's ownership all along from information that ChinaCast itself provided.  (Id. ¶ 125-126.)  Indeed, the SAC specifically pleads that "Deloitte obtained, reviewed, and maintained in its audit files evidence that since 2004, the Company owned only 49.25% of CCT HK, with 50% of CCT HK owned personally by Ron Chan" and later claimed that it had a phantom "trust" agreement to justify issuing a clean audit opinion despite its knowledge of the true facts.  (Id.)

Deloitte US reviewed this issue directly, had the same information that ChinaCast gave to DTTC and came to its own conclusion.  "As early as March 2007, then-CFO Sena

---

[5]   *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 0613 GBD, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004), and related cases cited by Deloitte US, are distinguishable.  (*See* Deloitte US Opp. at 15-16 and n.9.)  As now Circuit Judge Chin explained in *Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 00329 (DC), 2008 WL 5110919, at *4 (S.D.N.Y. Nov. 26, 2008), there was no liability in *Nuevo Mundo* and related cases because "there were no allegations that the international organization was 'able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms.'"  Here, Plaintiffs have specifically alleged, with supporting facts, that Deloitte US was able to control and influence the particular audits conducted by DTTC with respect to ChinaCast.

confirmed that **relevant files** had been sent to Deloitte US, ***which would review and determine whether the Company's financials properly could be consolidated.***"  (*Id*. ¶ 122 (emphasis added); *see also id*. ¶ 125 ("In March 2007, the Company's then-CFO Sena confirmed that 'Deloitte's technical department in US is looking into'" the consolidation issue.).)  What that information revealed was that ChinaCast did not actually own a majority interest in CCT HK, which meant its financial statements were false (irrespective of whether consolidation might be appropriate for some other, undisclosed reason).  Deloitte US acted with scienter for the same reasons DTTC did – it deliberately ignored evidence provided by ChinaCast that confirmed the Company owned only a minority interest in CCT HK.

Deloitte US seems to suggest that the fact that it actually looked into an issue *ipso facto* establishes that it could not have acted with scienter.  (*See* Deloitte US Opp. at 12.)  This seems to be a version of DTTC's oft-repeated argument that as long as it did ***something*** in connection with the audit, however recklessly-performed, it passes the "no audit at all test."  That does not work.  Just like DTTC, when examining the consolidation issue, Deloitte US could not ignore evidence that ChinaCast's financial statements falsely represented the Company's ownership position in a material subsidiary.  By doing exactly that, Deloitte US acted at least with recklessness.  Nor is Deloitte US entitled to an inference that the consolidation issue it was reviewing related to a subsidiary other than CCT HK.  Even under the PSLRA, Plaintiffs are entitled to the benefit of all favorable inferences from the facts they have alleged.[6]

---

[6]  We respectfully refer the Court to pages 7-9 of Plaintiffs' reply to DTTC's opposition for discussion of why ChinaCast's actual ownership interest in CCT HK was not publicly-disclosed and why DTTC's argument that consolidation might still have been proper under the true facts is irrelevant and without merit.  (*See* Deloitte US Opp. at 12, 14 and nn. 7-8.)  Furthermore, ChinaCast was a publicly-traded company on a US exchange.  Plaintiffs were entitled to rely on representations in the Company's 10-K about the ownership of its subsidiaries without having to review Hong Kong public records to verify those representations.  That the true facts were available in those records certainly does not excuse the

### III.   THE SECOND AMENDED COMPLAINT STATES A VALID SECTION 18 CLAIM AGAINST DELOITTE US

#### a.   The SAC Pleads Facts Showing that Deloitte US Caused DTTC to Make a False or Misleading Statement

Plaintiffs' Section 18 claim against Deloitte US is straightforward.  By virtue of the *de facto*, practical control it exercised over DTTC, Deloitte US caused DTTC to issue false audit opinions concerning the financial statements in ChinaCast's 10-Ks, on which Plaintiffs relied to their detriment.  (SAC ¶¶ 371-408.)  The natural meaning of the "cause to be made" clause in Section 18 is that it "describe[es] actors who control the speaker in some way."  *In re Adelphia Communications Corp. Securities & Derivative Litigation*, No. 03 MD 1529 (LMM), 2007 WL 2615928, at *12 (S.D.N.Y. Sept. 10, 2007) (cited for the same proposition by Deloitte US Opp. at 19).  For the same reasons as provided in Section II(a), above, Plaintiffs meet this standard.

Deloitte US contends that "the Proposed SAC must allege facts showing how Deloitte U.S. directed and controlled the manner, content and timing of DTTC's issuance of audit opinions."  (Deloitte US Opp. at 19 (citing *Adelphia*).)  But it already does.  For example, as discussed above, Deloitte US conducted its own examination of the consolidation of CCT HK in ChinaCast's financial statements.  Had Deloitte actually done what it should have, and demanded that DTTC withhold a clean audit opinion unless ChinaCast corrected the false representation in its financial statements concerning how much of CCT HK it owned, DTTC could not have issued a clean opinion.  Deloitte US's failure to object cleared the way for DTTC to issue a clean opinion, and (along with DTTC's own misconduct) caused that result.  Deloitte US had the final word on all issues involving US GAAP, as well as veto power over DTTC's

Deloitte entities' knowing (or, at least, reckless) issuance of clean audit opinions on financial statements that misrepresented such basic information.

audit opinions and the ability to issue binding instructions to DTTC.  DTTC could not issue a clean audit opinion over Deloitte US's objection.  That control equates to causation.

### b.     The SAC Pleads Subjective Falsity and Reliance

For fundamentally the same reasons that the SAC properly pleads culpable participation, it likewise pleads scienter, which is sufficient to show subjective falsity under the *Fait* standard.  *Fait v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011); *see, e.g.*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 661 (S.D.N.Y. 2007).  Furthermore, because Deloitte US raises essentially the same arguments against Plaintiffs' reliance allegations as DTTC, Plaintiffs respectfully refer the Court to Point II of the Argument in its reply to DTTC's opposition papers for the discussion of why these arguments are meritless.

## IV.    THE SECOND AMENDED COMPLAINT STATES A CLAIM FOR COMMON LAW FRAUD

For the reasons discussed above, the SAC has cured the deficiencies identified by the Court concerning the falsity, scienter and reliance elements of Plaintiffs' common law fraud claims.  Deloitte US is liable for causing false statements to be made by DTTC, regardless of whether it made those statements itself.  *See, e.g.*, *Tuosto v. Philip Morris USA Inc.*, 672 F. Supp. 2d 350, 359 (S.D.N.Y. 2009) ("[I]f defendant authorized and caused the statement to be made it is the same as though he made it himself.") (citations and quotations omitted).  It caused false statements to be made here.

## CONCLUSION

The Court should grant Plaintiffs' motion for leave to file the proposed Second Amended Complaint.

Dated: November 14, 2014
        New York, New York

                            LOWENSTEIN SANDLER LLP


                    By:  /s/ Lawrence M. Rolnick
                            Lawrence M. Rolnick
                            Amiad M. Kushner
                            1251 Avenue of the Americas
                            17th Floor
                            New York, NY  10020
                            Tel. 212.262.6700

                            -and-

                            Sheila A. Sadighi (*pro hac vice*)
                            Thomas E. Redburn (*pro hac vice*)
                            65 Livingston Avenue
                            Roseland, NJ  07068

                            Attorneys for Plaintiffs