UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
SPECIAL SITUATIONS FUND III QP, L.P.;            :
SPECIAL SITUATIONS CAYMAN FUND, L.P.;            :
COLUMBIA PACIFIC OPPORTUNITY FUND,               :
L.P.; FIR TREE VALUE MASTER FUND, L.P.;          :
FIR TREE CAPITAL OPPORTUNITY MASTER              :     No. 1:13-cv-01094 (ER)
FUND, L.P.; LAKE UNION CAPITAL FUND              :
L.P.; LAKE UNION CAPITAL TE FUND L.P.;           :
ASHFORD CAPITAL MANAGEMENT, INC.; ZS             :
EDU L.P.; MRMP MANAGERS LLC; WHI                 :
GROWTH FUND QP, LP; DOUGLAS N.                   :
WOODRUM; ROBERT A. HORNE; HOWARD S.              :
BERL; BRIGHTLIGHT CAPITAL PARTNERS                :
LP; and TORTUS CAPITAL MASTER FUND, LP,          :
                                                 :
                        Plaintiffs,              :
                                                 :
            v.                                   :
                                                 :
DELOITTE TOUCHE TOHMATSU CPA, LTD.;              :
DELOITTE & TOUCHE LLP; ANTONIO SENA;             :
JUSTIN TANG; YIN JIANPING; RICHARD XUE;          :
MICHAEL SANTOS, JOHN AND JANE DOES 1-            :
10; and ABC CORPS. 1-10,                         :
                                                 :
                        Defendants.              :
---------------------------------------------------------------------x

**PLAINTIFFS' RESPONSE TO DEFENDANT DELOITTE TOUCHE TOHMATSU CPA LTD.'S NOTICE OF SUPPLEMENTAL AUTHORITY AND IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Plaintiffs respectfully submit this response to Defendant Deloitte Touche Tohmatsu CPA Ltd.'s ("DTTC") Notice of Supplemental Authority (Dkt. 62) ("Notice") and in further support of their motion for leave to file the Second Amended Complaint ("SAC") against DTTC. Neither the Supreme Court's decision in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, No. 13-435 (U.S. Mar. 24, 2015), nor the Second Circuit's decision in *In re Advanced Battery Technologies, Inc.*, No. 14-1410-cv (2d Cir. Mar. 25, 2015),

warrants denying Plaintiffs leave to file the SAC.  Quite the opposite is true.  Both cases support the conclusion that the SAC states a valid claim against DTTC under the federal securities laws.

**I.       DTTC'S AUDIT OPINIONS ARE ACTIONABLE UNDER *OMNICARE*.**

Far from supporting DTTC (*see* Notice at 2-3), the Supreme Court's decision in *Omnicare* confirms that Plaintiffs' motion to file the SAC should be granted.  The Court made two holdings in *Omnicare*.  *First*, a statement of opinion is an "untrue statement of a material fact" under Section 11 of the Securities Act of 1933 where either (i) the speaker did not actually hold the belief expressed, or (ii) the statement includes factual assertions in support of the opinion that are untrue.  *Omnicare*, slip op. at 7-9.  *Second*, a statement of opinion is actionably misleading under the "omissions" prong of Section 11 where the plaintiff identifies "particular (and material) facts going to the basis for the [speaker]'s opinion – facts about the inquiry the [speaker] did or did not conduct or the knowledge it did or did not have – whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."  *Id*. at 18.

In support of the second holding, the Court explained that, depending on the circumstances, a reasonable investor reading a statement of opinion would conclude that, in addition to honestly holding the opinion being expressed, the speaker is also representing that it has a basis in fact for the opinion and is not aware of facts that substantially undermine it.  *Id*. at 11-15.  Citing the Prosser and Keeton treatise on torts, the Court found that is especially true where "a speaker 'holds himself out or is understood as having special knowledge of the matter which is not available to the plaintiff.'"  *Id*. at 15 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 109, p. 760-61 (5th ed. 1984)).  Of course, an auditor like DTTC fits that description to a tee by holding itself out to investors as possessing special accounting and auditing expertise that it has brought to bear in examining the issuer's

financial statements.  *See generally United States v. Arthur Young & Co.*, 465 U.S. 805, 810-11, 817-18 (1984).  Under *Omnicare*, where the speaker omits the fact that it did not conduct an adequate inquiry to support its opinion, or that it is aware of material facts that contradict its opinion, the opinion is materially misleading and, hence, actionable under the securities laws. *Omnicare*, slip op. at 18.

Here, Plaintiffs' allegations in the proposed SAC satisfy both prongs of *Omnicare*.  DTTC did not honestly believe that its audit opinions were accurate, because DTTC *knew* from materials in its possession during its audits that:  (i) ChinaCast did not have a 98.5% ownership interest in ChinaCast Technology (HK) Limited ("CCH HK"), even though ChinaCast's filings with the Securities and Exchange Commission ("SEC") said it did (SAC ¶¶ 15-19); (ii) over 200 transactions on the general ledger of ChinaCast Technology (Shanghai) Limited ("CCT SH"), involving more than one billion RMB in total, consisted of unexplained payments to, and receipts from, pawn shops, piston companies and other entities that had no legitimate connection whatsoever with ChinaCast's business (and that one of its own auditors, Jennie Jiang, had figured out that ChinaCast was borrowing money from local individuals, instead of using banks, without disclosing that fact to investors) (*id.* ¶¶ 22-28, 170-91); (iii) ChinaCast Technology (BVI) Limited's ("CCT BVI") general ledger falsely showed material revenues from direct sales to customers even though CCT BVI was merely a holding company and no payments for any of these alleged sales were reflected in CCT BVI's bank statements (*id*. ¶¶ 45-46, 230-35); (iv) ChinaCast had widespread internal control deficiencies that directly impacted the 2009 audit (*id.* ¶¶ 201-09); and (v) ChinaCast failed to pay DTTC for its 2009 audit work, raising significant issues about ChinaCast's cash position (and which DTTC explicitly told ChinaCast it considered to be a red flag) (*id*. ¶¶ 239-40).  Given this knowledge, DTTC could not

possibly have sincerely believed that ChinaCast's financial statements fairly reflected the Company's results from operations and financial position under GAAP. Moreover, DTTC's audit opinions incorporated its false factual representation that it had conducted audits of ChinaCast in accordance with PCAOB standards, when in fact it had effectively conducted no audit at all.

DTTC's audit opinions were also materially misleading in that they omitted to disclose both that DTTC had conducted a recklessly deficient audit investigation, on which its audit opinions supposedly were based, and that it knew of numerous facts that outright contradicted those opinions. For example, with respect to its deficient audit procedures, DTTC failed to disclose that: (i) it had deliberately excluded CCT HK, a highly material subsidiary, from its Sarbanes-Oxley internal control testing without any legitimate basis for doing so (thereby willfully blinding itself to Chan's embezzlement of $35 million in investor funds) (SAC ¶¶ 16-17, 197-98, 301-02); (ii) it deliberately refused to ask ChinaCast's banks to confirm that the Company's term deposits (some of the Company's most important assets) were not pledged and ignored the Company's debt cards that would have revealed the pledges (*id*. ¶¶ 144-49); (iii) one of its audit partners actively colluded with ChinaCast to conceal the writedown of a material receivable (*id*. ¶¶ 29-32, 307-09); and (iv) it failed to examine the payment voucher to confirm that ChinaCast had actually received payment for stock in a related party transaction with one of Chan's companies that accounted for a huge portion of the Company's cash on hand (*id*. ¶¶ 216-20). As discussed above, DTTC also knew of many facts that contradicted the accuracy of ChinaCast's financial statements, thereby demonstrating that DTTC had no basis at all (let alone a reasonable one) for the clean audit opinions it rendered. The SAC sets forth these allegations with more than adequate particularity.

*Omnicare* requires nothing more at the pleading stage to demonstrate the false and misleading nature of DTTC's audit opinions under Sections 10(b) and 18 of the Securities Exchange Act of 1934. The SAC states a valid claim.

## II. *ADVANCED BATTERY* DID NOT CHANGE THE LAW OF AUDITOR SCIENTER AND, IN ANY EVENT, IS CLEARLY DISTINGUISHABLE.

Contrary to DTTC's characterization of the case (*see* Notice at 4), the Second Circuit's decision in *Advanced Battery* endorsed the very same standard for auditor scienter that Plaintiffs have consistently relied upon to impose liability against DTTC. The sentence of the opinion selectively quoted by DTTC goes on to state that auditor scienter can be established "as, for example, when a defendant conducts an audit so deficient as to amount to no audit at all, or disregards signs of fraud so obvious that the defendant must have been aware of them[.]" *ABAT*, slip op. at 12 (citing *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 160-61 (2d Cir. 2012)). The "no audit at all" standard is the same one for which Plaintiffs have consistently advocated throughout this motion. (*See, e.g.*, Plaintiffs' Memorandum of Law in Support of Their Motion for Leave to File a Second Amended Complaint, at 3.) What DTTC continues to refuse to acknowledge is that under the law of this Circuit, "allegations of a recklessly performed audit ***will approximate intent***." *Varghese v. China Shenguo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 610 (S.D.N.Y. 2009) (emphasis added). The SAC's detailed allegations of auditor recklessness easily meet this standard.

*Advanced Battery* is also distinguishable from this case. The Second Circuit held merely that the auditors there had no obligation under applicable accounting and auditing standards to review the issuer's foreign regulatory filings, and that the plaintiff's remaining allegations amounted to nothing more than the bald assertion that the auditors would have discovered the fraud had they conducted a proper audit. *See ABAT* slip op. at 12-13. Indeed, the

complaint in that case failed to allege any specific facts known by the auditors that put them on notice of fraud. *See, e.g.*, *id*. at 17 ("But the Proposed Complaint fails to allege that [one of the auditors] knew that [the issuer] paid an inflated price for Shenzen Zhongqiang.").

Here, by contrast and as explained above, the SAC pleads in detail numerous, particularized facts DTTC knew from materials it reviewed during its audits which demonstrated that ChinaCast's financial statements were false. The SAC also alleges (again, with particularity) that DTTC willfully blinded itself to other inculpatory materials in an attempt to shield itself from learning about other aspects of the fraud, such as by deliberately excluding CCT HK from internal control testing and by designing its bank confirmation requests to avoid asking the banks to confirm whether ChinaCast's term deposits were pledged. Finally, Plaintiffs allege that a DTTC audit partner colluded with ChinaCast in fraudulently hiding an unrecoverable, related party receivable. The SAC thus contains precisely the kind of specific allegations sufficient to demonstrate auditor scienter, and not merely negligence, that the complaint in *Advanced Battery* lacked. DTTC conducted an "audit" that effectively amounted to no audit at all, and disregarded obvious signs of fraud at ChinaCast. Accordingly, the SAC states a valid claim against DTTC for securities fraud.

## CONCLUSION

*Omnicare* and *Advanced Battery* both support the imposition of securities fraud liability against DTTC. Plaintiffs' motion for leave to amend should be granted.

Dated: April 1, 2015
      New York, New York

                                    LOWENSTEIN SANDLER LLP

                                    By: /s/ Lawrence M. Rolnick

-7-

Lawrence M. Rolnick
1251 Avenue of the Americas
17th Floor
New York, NY  10020
Tel. 212.262.6700

-and-

Sheila A. Sadighi (*pro hac vice*)
Thomas E. Redburn (*pro hac vice*)
65 Livingston Avenue
Roseland, NJ  07068
Attorneys for Plaintiffs